IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CASE NO. 05-71621 |
| TOWN OF MULDROW, | ) | CASE NO. 05-71622 |
| MULDROW PUBLIC WORKS | ) | |
| AUTHORITY, | ) | Jointly Administered Under |
| | ) | Case No. 05-71621 |
| **Debtors.** | ) | |
| | ) | Chapter No. 9 |

### DISCLOSURE STATEMENT SUBMITTED
### BY TOWN OF MULDROW AND MULDROW PUBLIC WORKS AUTHORITY

### ARTICLE I.
Introduction

The Town of Muldrow and the Muldrow Public Works Authority (the "Debtors" or "Muldrow"), are the proponents ("Proponents") of the First Plan of Adjustment of the Town of Muldrow and the Muldrow Public Works Authority (the "Plan"), and respectfully submits the Plan dated September ___ , 2010, attached hereto as Exhibit "A." Capitalized terms in this Disclosure Statement, unless defined herein, shall have the meaning as defined in the Plan. This Disclosure Statement is intended to provide information to all known Creditors and Interest Holders for use in deciding how to evaluate the operations and benefits of and how to vote on the Plan. Solicitation of acceptances of a plan is not permitted until a disclosure statement has been approved by the Bankruptcy Court. The Bankruptcy Rules and procedures governing solicitation of votes and balloting are described in more detail in Article XIII, Section 13.1, beginning at page 16.

### ARTICLE II.
Concept of the Plan

The Plan contemplates that Muldrow will emerge from its Chapter 9 bankruptcy case having adjusted its debts and obligations to continue to provide municipal and utility services to

the citizens of Muldrow. Muldrow will continue to provide water and wastewater services to OK Foods pursuant to its April 1, 2010, contract and will begin upgrading its current POTW consistent with ODEQ's provided schedule of work. All of Muldrow's other debts have been paid and will continue to be paid timely in the ordinary course of business. It is believed that there are no outstanding pre-petition obligations or claims (other than those of OK Foods and ODEQ) that have not been paid or will be paid in the ordinary course of business. Nevertheless, Debtors have provided Plan terms to address such claims in the event there are such claims remaining.

The Plan provides that all Class 1 Secured Claims, Class 2 Priority Non-Tax Claims, and General Unsecured Claims has been paid in full already, will be paid in full on the Effective Date, or will be paid in full as they become due in the ordinary course of business. Holders of Class 4 ODEQ Claims will not receive payment of their claims, but Muldrow will complete the tasks requested by ODEQ to improve its POTW within the time limitations set forth in the Plan. In addition, funds have been budgeted to complete the POTW improvements requested by ODEQ. Holders of Class 5 OK Foods Claims have agreed to release all of their Claims against Muldrow in exchange for Muldrow's agreement to the Agreement for Sale and Purchase of Water and Wastewater Services, dated April 1, 2010.

Post-Confirmation management of Muldrow will continue to be directed by a five (5) member Board, elected from time-to-time by the citizens of Muldrow. The current Board consists of Catherine Jones, Scott Sharp, Darren Keith, Jim Ross, and Stephen Michael. Catherine Jones will continue to serve as Mayor of Muldrow. David Taylor will continue to serve as the city manager of the Town of Muldrow and as manager of the Muldrow Public Works Authority.

The Board and Mr. Taylor, with the assistance of Municipal Finance Services ("MFS"), will oversee Muldrow's efforts to obtain financing for the improvements to Muldrow's POTW in compliance with ODEQ's request. Muldrow's engineering report for said improvements, prepared by the environmental engineering firm Tetra Tech, has already been approved by the ODEQ, and MFS has indicated that the current projected revenues from OK Foods pursuant to the April 1, 2010, Agreement for Sale and Purchase of Water and Wastewater Services, when combined with Muldrow's projected general water and wastewater revenues, will be sufficient to service the debt Muldrow must undertake to complete the improvements recommended in Tetra Tech's report.

Creditor Claims, either filed as Proofs of Claim or Scheduled in this Chapter 9 Case, approximate $2,743,780. The Debtor has listed Creditors' Claims totaling approximately $2,743,780 in its Schedules. Substantial reduction of secured claims has occurred since Schedules were filed. These lists of scheduled claims and Creditor proofs of claim substantially overlap. The remaining secured claims are approximately $0. The unsecured Claims consisting of the ODEQ Claims of approximately $2,260,000 are disputed. The total amount of Claims have not been determined but it is estimated that Allowed Unsecured Claims will be approximately $0, of which trade vendor claims will be approximately $0; and Priority Claims will be approximately $0. Administrative Claims, which were incurred post-petition, are estimated at $340,000.

The funding for this Plan is expected to come from: (i) cash on hand; (ii) funds projected to be received from general water and wastewater customers of Muldrow; and (iii) loans from Rural Development (a division of the United States Agriculture Department) and/or Oklahoma Water Resources Board.

The administration of the Plan will be provided by Muldrow through its management, as identified herein. The Plan provides that all assets of the Debtors, including all property, tangible or intangible, all books and records, funds, privileges, claims and litigation claims, including claims arising under the Bankruptcy Code, together with all defenses, rights of setoff, and recoupment will be remain in Muldrow upon Confirmation of this Plan. Muldrow will be obligated by the Plan to make payments to holders of Allowed Claims as provided in the Plan, although as noted above, there do not appear to be any claims that remain unpaid or that will not be paid in the ordinary course of business. The Plan will also require Muldrow to perform under its April 1, 2010, contract with OK Foods and with respect to its plan treatment of ODEQ's claims.

## ARTICLE III.
### The Debtors

3.1.    **Brief History Prior to Bankruptcy**

The Town of Muldrow, located in Sequoyah County, Oklahoma, was named in honor of Henry Lowndes Muldrow, a friend of one of the town's founders and a Mississippi Congressman who used his personal influence with a railroad to have a depot located at the Muldrow townsite. At the 2000 census, Muldrow had a population of 3,104, and 18.2% of the population was below the poverty line. The median household income was $26,216.

3.2.    **Brief History of Events Leading to Bankruptcy**

The Town of Muldrow (with the Muldrow Public Works Authority) and OK Foods, Inc., a chicken processer, entered into a contract for the provision of water and wastewater services by Muldrow to OK Foods, on February 9, 1995. The contract was part of an incentive package offered by Muldrow to OK Foods, which included Muldrow's purchase and deed to OK Foods of the real property on which OK Foods' plant would be located, and the building of roads, rail

spur, and utilities pipelines. Upgrades to Muldrow's wastewater plant were also contemplated, but the upgrades were insufficient, and the existing contract did not provide sufficient funds to make up the difference. The contract was very basic and contained no restrictions on OK Foods' discharge into Muldrow's system.

OK Foods' Muldrow chicken processing facility came online in 1996. Muldrow's publicly owned wastewater treatment works ("POTW") began experiencing problems with odor in fall of 1997. OK Foods provided Muldrow with a 50 horsepower aerator to help with the odor problem. Shortly thereafter, Muldrow began discussions with OK Foods regarding the biochemical oxygen demand ("BOD") waste that was being discharged by OK Foods to the POTW, and in response, OK Foods hired the Stover Group, who prepared improvement and operating recommendations to assist Muldrow.

January 1, 2000, Muldrow and OK Foods amended their existing contract. OK Foods' original significant industrial user ("SIU") permit from ODEQ limited its BOD discharge to 500 pounds per day, and OK Foods' requested and received and increase in that limit to 1,000 pounds per day, which was granted by ODEQ. The compliance schedule of OK Foods' modified permit required OK Foods to build a flow equalization basin ("FEB"). Rather than build an FEB, OK Foods began to build a pretreatment system to satisfy the compliance schedule.

Muldrow's POTW exceeded its permit limits for BOD eight times between September 2003 and July 2004. On September 20, 2004, ODEQ presented Muldrow with a consent order requiring it to upgrade its POTW. Muldrow could not agree to the consent order because it had insufficient revenue to make the upgrades to its POTW required by the order. Failure of Muldrow to agree to the proposed consent order exposed Muldrow to penalties of $10,000 per

day for each violation, for a total over $2 million in fines.  On April 21, 2005, Muldrow entered bankruptcy.

### 3.3.  **Brief History of Events Subsequent to Bankruptcy.**

On November 22, 2005, an Agreed Order Approving the Rejection of Executory Contract was entered, cancelling the existing contract between Muldrow and OK Foods and replacing it with the Interim Utility Charges and Cost Agreement.  The Interim Utility Charges and Cost Agreement sets the rate for the first 100,000 gallons of metered water at $230.61 per month, with each additional 1,000 gallons metered to be paid for at a rate of $2.19; it sets the rate for wastewater services at $221.21 for the first 100,000 gallons metered and $2.62 for each additional 1,000 gallons, less a credit for wastewater hauled by OK Foods during each billing cycle.  The Interim Utility Charges and Cost Agreement incorporated the other terms of the prior amended agreement, including the annual 3% rate increase, but contained no duration term.

OK Foods' pretreatment system was completed at its Muldrow facility in 2006.  The pretreatment system has reduced OK Foods' BOD output below 500 pounds per day.

In order to work out its liabilities to ODEQ, Muldrow engaged Jon Nelson of Tetra Tech to prepare an engineering study and report regarding improvements to Muldrow's POTW:  The first draft of that report was completed March 19, 2007.  Mr. Nelson's revised engineering report was provided to OK Foods, ODEQ, and the Court on August 9, 2007.  Representatives of OK Foods, ODEQ, and Muldrow met monthly by teleconference, and technical consultants for all three met in person, to make critiques and improvements to Mr. Nelson's report.  Agreement was reached by all three parties concerning the technical and engineering aspects of the upgrades that are necessary to bring Muldrow's POTW into compliance with federal and state environmental regulations, save for a few items of reservation by OK Foods.  OK Foods' points of disagreement

with Jon Nelson's report, which pertained almost exclusively to the history of the conflict between OK Foods and Muldrow, provided by letter from OK Foods, were included in Exhibit G to the report, as OK Foods requested.

Jon Nelson's final report included engineering and cost projections for three scenarios: (1) if OK Foods ceased discharging wastewater to Muldrow; (2) if OK Foods continued to discharge to Muldrow at its current permit limits(1,000 lbs of BOD/day); and (3) if OK Foods continued to discharge to Muldrow at a reduced limit (500 lbs BOD/day). OK Foods, ODEQ, and Muldrow's representatives then began discussions of funding with representatives of the U.S. Department of Agriculture's Rural Development agency, and pursuant to these discussions and based on Jon Nelson's final report, Municipal Finance Services ("MFS") prepared a rate schedule for each of the three scenarios. It was the intention of the parties that OK Foods would select one of the three scenarios developed by Jon Nelson and MFS so that scenario could be used to fund the update to Muldrow's treatment facility and be incorporated into Muldrow's Plan of Adjustment in Bankruptcy. OK Foods has since selected the third of the three scenarios, which is incorporated into its April 1, 2010, agreement with Muldrow.

Effective April 1, 2010, Muldrow and OK Foods entered into an Agreement for Sale and Purchase of Water and Wastewater Services intended to provide sufficient revenue for Muldrow to upgrade its POTW to comply with ODEQ guidelines, as well as to limit OK Foods' waste in the future to ensure Muldrow's continued compliance with those guidelines. The ODEQ then provided a schedule of work required to bring Muldrow's POTW into compliance which would allow Muldrow to avoid any fines or penalties from ODEQ, which Debtors used as a basis to formulate this Plan.

## ARTICLE IV.
Operating History and Pro Formas

4.1.     **Post-Petition Operating History.**

While under bankruptcy protection, Muldrow has continued to pay all of its debts timely and in the ordinary course of its business, save for the claims of the ODEQ for penalties and any claims of OK Foods based on OK Foods' prior contracts with Muldrow.

4.2.     **Post-Confirmation Projected Performance.**     As part of preparing the Plan, Muldrow, through its experts at Tetra Tech and MFS, has performed a detailed engineering and financial analysis of the projected improvements to its POTW.  A copy of the report, which is voluminous, and contains numerous schematics and engineering diagrams, is available for inspection and copying upon written request and reasonable notice to counsel for Muldrow.

## ARTICLE V.
Assets and Liabilities of the Debtor

5.1.     **Assets.**

As of September 10, 2010, the Debtors have unrestricted cash and cash equivalents in the appropriate aggregate amount of $1,370,376.  If the Plan is confirmed, these funds, along with loan proceeds, will be available to perform under the terms of the Plan.

5.2.     **Leases and Executory Contracts.**

The Plan proposes to seek approval of the following executory contracts:

- The Agreement with OK Foods dated April 1, 2010.

All pre-petition leases and executory contracts shall be deemed assumed by the Confirmation Order, except those certain agreements with OK Foods that have been avoided and superseded by the April 1, 2010, Agreement, as set forth in Section 4.5 of the Plan.

5.3. **Administrative Claims.**

Administrative Claims are required to be paid in full on or before the effective date of the Plan or when they become due thereafter upon approval by the Bankruptcy Court. To date, these fees have been paid by the Debtor in the ordinary course of business during the pendency of this Case.

| Professional | Fees & Expenses Paid as of September, 2010 | Estimated Fees & Expenses up to Confirmation of Plan |
|---|---|---|
| Doerner, Saunders, Daniel & Anderson, L.L.P. | $202,054.95 | $50,000 |
| Tetra Tech Engineering | $83,556 | No additional fees |
| Municipal Finance Services | $5,750 | No additional fees |

These fees have been paid as they accrued for the duration of the bankruptcy. Muldrow will continue to incur fees in the ordinary course of business, including fees and expenses owed to its professionals until the Effective Date of the Plan. The treatment of such Administrative Claims and Fee claims will be provided for in Section 5.1 of the Plan.

5.4. **Claims Against Muldrow.**

(1) **Secured Claims.**

The Bankruptcy Code provides that a Claim of a Creditor that holds a security interest or lien on the Muldrow property is a "secured claim" only to the extent that there is value in the collateral available to that Creditor. The only secured claim outstanding is that of Armstrong Bank. It is believed that all other Secured Claims have been paid in full.

(2) **General Unsecured Claims.**

The amount of Unsecured Claims are in excess of $2,260,000. The Plan provides for unsecured claims in Classes 3, 4, and 5. Class 3 represents unsecured trade debt; Class 4

represents the contingent and disputed obligations and Claims owed to ODEQ; and Class 5 represents the contingent and disputed obligations and Claims owed to OK Foods.

(3) <strong><u>Priority Non-Tax Claims</u>.</strong>

Priority Non-Tax Claims are placed in Class 2 of the Plan. The Class includes unsecured claims entitled to priority pursuant to § 507(a) of the Bankruptcy Code. Claims contained in Class 2 are estimated to be $0.

(4) <strong><u>Claim Review and Objection</u>.</strong>

The Debtors will conduct a review of Creditor Claims in Classes 1, 2, and 3 within ninety (90) days of the Effective Date.

<strong><u>ARTICLE VI.</u></strong><br>Summary of the Plan

**SOME PROVISIONS OF THE PLAN ARE NOT DESCRIBED IN THIS DISCLOSURE STATEMENT. EACH CREDITOR SHOULD REFER TO THE PLAN ITSELF FOR A FULL ANALYSIS OF ITS CONTENTS. IN THE EVENT OF ANY DIFFERENCE BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE PLAN WILL CONTROL.**

The Plan is dependent upon the following:

1. Continuation of the Agreement between Muldrow and OK Foods dated April 1, 2010, and OK Foods' regular payments to Muldrow pursuant thereto.

2. Muldrow's ability to obtain funding for the improvements to its POTW.

6.1. **<u>General Overview</u>.**

The Plan is a plan of adjustment. It proposes to pay Creditors and expenses from funds on hand and funds generated from the continued operation of Muldrow's city and utility services. Muldrow, through its management, will administer the Plan and make payments according to the

- 10 -

Case 05-71621 Doc 250 Filed 09/30/10 Entered 09/30/10 18:09:20 Desc Main
Document Page 10 of 57

terms contained therein. The Plan also proposes to approve the April 1, 2010, Agreement with OK Foods, and require Debtors to perform certain obligations with respect to improvements to its POTW as set forth in more detail below.

      6.2.    **Classification of Claims and Treatment.**

The Plan classifies claims in the following classes:

**Class 1:**        **Secured Claims**

Class 1 shall consist of all Allowed Claims secured by collateral of the Debtors ("Secured Claims"). Class 1 Claims, if any, have already been or shall be paid in full in the ordinary course of Debtors' business. Creditors holding Secured Claims will retain their security interests and/or liens in their collateral to the extent such lien is valid and perfected prior to the Petition Date or permitted under § 546(b) of the Bankruptcy Code. Class 1 is not impaired, and the holders of Class 1 Claims are deemed to have accepted the Plan.

**Class 2:**        **Priority Non-Tax Claims**

Class 2 shall consist of all Allowed Claims for priority non-tax Claims against the Debtors ("Priority Non-tax Claims"). Each holder of a Class 2 Claim has already been or shall be paid in full in the ordinary course of Debtors' business. Class 2 is not impaired, and the holders of Class 2 Claims are deemed to have accepted the Plan.

**Class 3:**        **General Unsecured Claims**

Class 3 shall consist of all Allowed Claims for general unsecured Claims, other than those in Class 4 and Class 5 below, against the Debtors ("General Unsecured Claims"). Each holder of a Class 3 Claim has already been or shall be paid in full in the ordinary course of Debtors' business. Class 3 is not impaired, and the holders of Class 3 Claims are deemed to have accepted the Plan.

**Class 4:        ODEQ Claims**

Class 4 shall consist of all administrative penalty Claims and other Claims of the Oklahoma Department of Environmental Quality ("ODEQ") against Debtors, which will be released and discharged upon approval of the Plan.  In return for such release and discharge, the will Debtors comply with the following requirements:

1.      Submit approvable plans and specifications ("P&S"), an application for a construction permit, and the associated fees for the construction proposed in the approved engineering report already submitted to ODEQ by Debtors. All proposed construction must comply with OAC 252:656.   This task must be completed by June 1, 2011.

2.      Begin construction in accordance with approved P&S from Task 1. All construction must comply with OAC 252:656.  This task must be completed by December 1, 2011.

3.      Complete construction in accordance with approved P&S from Task 1. All construction must comply with OAC 252:656.  Debtors shall notify DEQ in writing about the completion date in sufficient time that DEQ can attend and participate in the final construction inspection.  This task must be completed by December 1, 2012.

4.      Attain three (3) consecutive months of compliance with the OPDES Permit.  This task must be completed by July 1, 2013.

**Class 5:        OK Foods Claims**

Class 5 shall consist of all Claims of OK Foods, Inc. against Debtors, including any Claims for cancellation of prior executory contracts for the provision of water and wastewater services to OK Foods, Inc. by Debtors.  All such prior contracts between Debtors and OK Foods,

Inc., shall be deemed void and superceded by that Agreement for Sale and Purchase of Water and Wastewater Services, effective date April 1, 2010 ("Agreement"). OK Foods, Inc. shall, in return for entry into such Agreement, release all of its Claims against Debtors. In approving this Plan, the Bankruptcy Court also approves the Agreement between the Debtors and OK Foods as a settlement and compromise pursuant to Bankruptcy Rule 9019.

## **ARTICLE VII.**
Administration after Confirmation of the Plan

7.1. **Operation of Municipality.**

    A.    Governance of Debtors.

        1)    <u>Board of Directors – Officers</u>. The Board of Directors and management shall consist of the following:

            (a)    Catherine Jones, Mayor

            (b)    Scott Sharp, Vice Mayor

            (c)    Darren Keith

            (d)    Jim Ross

            (e)    Stephen Michael

        2)    The Directors noted herein shall serve until the next scheduled election and thereafter as elected by the citizens of Muldrow.

    B.    <u>Post-Petition Operations</u>. All assets of the Debtors, as noted earlier herein, and as set forth in the Plan, will remain assets of Muldrow subject to existing liens, if any, of Creditors holding Allowed Secured Claims. Muldrow will continue to operate in the ordinary course of its business.

7.2.    **Disputed/Undetermined Claims.**

Muldrow will not make any payments on any Disputed or Undetermined Claims, but will reserve from distribution funds necessary to fund such claims in amounts asserted, pending claim resolution.  Upon the Confirmation Date, any Claims scheduled as disputed for which a Creditor did not file a proof of claim and all Claims listed on Schedules as unknown or as zero will be disallowed, if a Proof of Claim has not been filed.  However, if a Creditor is originally scheduled by the Debtor as disputed filed a Proof of Claim, the Claim will continue to be treated as a Disputed Claim.

## ARTICLE VIII.
### Effective Date of the Plan

The effective date of the plan; i.e., when it goes into effect, will occur on the 20th day after the Confirmation Order is entered.

## ARTICLE IX.
### Release and Exculpation

**THE PLAN PROVIDES THAT MULDROW, ITS COUNSEL, AND ITS OTHER PROFESSIONALS SHALL BE RELEASED AND EXCULPATED FROM ANY CLAIM OR LIABILITY TO ANY HOLDER OF A CLAIM OR INTEREST HOLDER FOR ANY ACT OR OMISSION IN CONNECTION WITH, OR ARISING OUT OF, THE CHAPTER 9 CASE, THE CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, OR THE ADMINISTRATION OF THIS PLAN, EXCEPT FOR WILLFUL MISCONDUCT OR GROSS NEGLIGENCE.**

## ARTICLE X.
### Alternative to the Plan

Proponent knows of no alternative to the Plan since the conversion of the Case to one under Chapter 7 of the Bankruptcy Code, in which a trustee would be appointed to liquidate

Muldrow's assets and administer the estate, is not generally available to municipalities such as Muldrow.

## **ARTICLE XI.**
Confirmation of the Plan

The Plan must be accepted by a sufficient number of Creditors to be confirmed. Whether this requirement is met is determined by counting the votes cast in each Class. The Bankruptcy Code requires that the Plan be accepted by at least one Class that is impaired by the Plan. Under the Bankruptcy Code, a Class has accepted the Plan if, counting all holders of claims that vote in a Class, the holders of (i) at least 2/3 of the aggregate dollar amount and (ii) more than 1/2 in number of the Allowed Claims vote to accept the Plan.

If at least one impaired Class accepts the Plan, the Proponent may ask the Bankruptcy Court to confirm the Plan even if other Classes have voted against it. The Bankruptcy Code sets a minimum standard that the Plan must meet in order to confirm the Plan despite its rejection by one or more Classes. If an unsecured Class impaired by the Plan rejects it, no claim or interest that is junior to the most senior unsecured rejecting Class may retain or receive property under that Plan on account of its junior Claim or interest in any property unless the senior Class will be paid in full. If accepted by either ODEQ or OK Foods, the Plan meets this criterion. Sections 1129(a)(2), (3), (6), (8) and (10) of the Bankruptcy Code contain other criteria that the Bankruptcy Court must find have been met before it may confirm a plan of adjustment under Chapter 9, and the Plan likewise meets these criteria.

Section 1129 of the Bankruptcy Code provides that the Bankruptcy Court shall not confirm a plan of reorganization unless the plan is feasible (that is, its confirmation is not likely to be followed by the need for further financial reorganization). The Proponent has concluded that the Plan satisfies this criterion.

Case 05-71621    Doc 250    Filed 09/30/10    Entered 09/30/10 18:09:20    Desc Main
Document    Page 15 of 57

## ARTICLE XII.
Miscellaneous Matters

12.1.　**Risk Factors.**

　　A.　**Inadequate Capital to Fund POTW Improvements.**

Muldrow has not yet obtained funding for the improvements it must make to comply with ODEQ's requirements as set forth in the Plan; however, MFS is confident that with the current April 1, 2010, contract with OK Foods in place, funding will be obtainable, probably through either the Oklahoma Water Resources Board and/or the U.S. Department of Agriculture, through Rural Development.

**THE PROPONENT ASSUMES NO RESPONSIBILITY FOR, AND MAKES NO REPRESENTATIONS REGARDING THE EFFECT THE CONSUMMATION OF THE PLAN WILL HAVE ON THE TAX CONSEQUENCES TO ANY CREDITORS OR PARTY-IN-INTEREST. THEREFORE, CREDITORS ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS CONCERNING THE FEDERAL, STATE, AND LOCAL TAX CONSEQUENCES OF THE PLAN, TAKING INTO ACCOUNT THEIR PARTICULAR TAX SITUATIONS.**

## ARTICLE XIII.
Bankruptcy Procedures Governing
Solicitation of Votes, Voting, and Confirmation

13.1.　**Explanation of Chapter 9.**

Chapter 9 is the municipal debt adjustment section of the United States Bankruptcy Code. In Chapter 9, a municipality is authorized to adjust its debts for its own benefit and that of its creditors, by submitting a written plan for consideration, accompanied by information concerning the debtor and proposed plan in a disclosure statement approved by the Bankruptcy Court.

Case 05-71621　Doc 250　Filed 09/30/10　Entered 09/30/10 18:09:20　Desc Main
Document　Page 16 of 57

Formulation of a "Plan" is the principal purpose of a Chapter 9 case. A plan is the document that proposes the methods for satisfying creditors' claims against the debtor. The plan places creditors' claims into "classes" (groups of similar claims), and treats each creditor's claim within a class in the same way. Creditors are entitled to be heard by the Bankruptcy Court about the plan, through the process of voting on, and objecting to, the plan.

Your participation in this process is important. The Bankruptcy Court has set the following dates regarding the Plan:

**Ballots Due:** _____

**Objection to Confirmation Due:** _____

**Hearing on Confirmation of Plan:** _____

These dates and events are explained further below:

13.2. **The Process of Voting on the Plan.**

A Creditor's right to vote depends on whether the Creditor's rights against the Debtor are "impaired," as that word is defined in the Bankruptcy Code. A claim that will not be repaid in full under the Plan, or as to which the Creditor's legal rights are altered is "impaired." A holder of a claim or interest that is impaired by a plan is entitled to vote to accept or reject that plan so long as its claim or interest has been allowed, or is deemed allowed under § 502 of the Bankruptcy Code at the time of voting. Even a claim or interest that has not been allowed at that time can be temporarily allowed for voting purposes if the procedures given under Bankruptcy Rule 3018 are followed.

In the Plan, Classes 4 and 5 are "impaired" and are entitled to vote, and Classes 1, 2, and 3 are "unimpaired" and not entitled to vote; their affirmative vote is presumed as a matter of law pursuant to § 1126(f) of the Bankruptcy Code.

This Disclosure Statement has been approved by the Bankruptcy Court, and is being submitted to Creditors and Interest holders, together with the Plan and a Ballot for voting on the Plan. In this case, the Bankruptcy Court has ordered that Creditors who wish to vote to accept or reject the Plan must send their Ballots to the counsel for Muldrow so that they are received no later than 5:00 p.m. Central Time, on _____ , 2010. Ballots must be delivered to the following address:

Chad J. Kutmas
Doerner, Saunders, Daniel & Anderson, L.L.P.
320 South Boston, Suite 500
Tulsa, OK 74103
(918) 591-5331
gmcdonald@dsda.com

A Creditor that holds Claims in more than one Class is entitled to submit a separate Ballot for each Class. Completed Ballots may be returned by e-mail provided that the Ballot is a scanned image and is complete, showing the signature of the person casting the Ballot for the Creditor or Interest holder, and submitted to Chad J. Kutmas at ckutmas@dsda.com.

Once a Creditor has submitted a Ballot, the vote generally cannot be withdrawn or modified, except that Bankruptcy Rule 3018 provides that, for cause shown and within the time fixed for acceptance or rejection of the Plan, the Bankruptcy Court, after notice and hearing, may permit a Creditor to change or withdraw an acceptance or rejection. Therefore, please take care to fully consider your intentions prior to submitting your Ballot.

**ALL PARTIES ELIGIBLE TO VOTE ON THE PLAN ARE URGED TO COMPLETE AND RETURN THEIR BALLOTS PROMPTLY TO AVOID DELAY IN CONFIRMING THE PLAN. ALL CREDITORS ARE ALLOWED TO VOTE ON THIS PLAN, BUT THE OPPORTUNITY TO VOTE DOES NOT CONSTITUTE ALLOWANCE OF ANY CLAIM OR INTEREST. IF YOU HAVE ANY QUESTIONS**

REGARDING PROCEDURES FOR VOTING, CONTACT THE ATTORNEY FOR MULDROW AT THE ADDRESS STATED ON THE LAST PAGE OF THIS DISCLOSURE STATEMENT.

    13.3.   **Hearing on Confirmation of the Plan.**

After the Ballots are received and counted, the Bankruptcy Court will hold a confirmation hearing on the Plan. Confirmation is the process by which the Bankruptcy Court will decide whether a sufficient number of Creditors or interest holders have voted for the Plan, and whether the Plan meets the other requirements of the Bankruptcy Code. If the Bankruptcy Court confirms the Plan, it will become binding on all parties, whether or not they have voted for the Plan.

**THE BANKRUPTCY COURT HAS SCHEDULED A HEARING ON CONFIRMATION OF THE PLAN TO COMMENCE AT on _____ , 2010 at  :00  .m. Any party who wishes to object to confirmation of the Plan must file a written objection with the Bankruptcy Court and must also send a copy of such objection to Chad J. Kutmas, of the firm, Doerner, Saunders, Daniel & Anderson, L.L.P., 320 S. Boston Avenue, Suite 500, Tulsa, Oklahoma 74103, or by e-mail at ckutmas@dsda.com, and any other person entitled to receive service of the objection no later than _____ , 2010.**

    13.4.   **Sources of Information, Responsible Parties, and Disclaimers.**

This Disclosure Statement has been approved by order of the Bankruptcy Court dated _____ , 2010, as containing, in accordance with requirements of the Bankruptcy Code, adequate information of the kind and in sufficient detail that would enable a reasonable, hypothetical investor typical of holders of impaired classes of claims to make an informed judgment about the Plan.

Case 05-71621    Doc 250    Filed 09/30/10    Entered 09/30/10 18:09:20    Desc Main
Document    Page 19 of 57

Except as otherwise noted, the sources of information contained in this Disclosure Statement are the pleadings filed during bankruptcy, information from the Debtors' representatives, and records available to Muldrow. The Proponent of the Plan has relied on the pleadings filed by the Debtor during the bankruptcy.

ALTHOUGH THE PROPONENT OF THE PLAN HAS MADE EVERY EFFORT TO PROVIDE ACCURATE AND COMPLETE INFORMATION IN THIS DISCLOSURE STATEMENT, THE PROPONENT MAKES NO REPRESENTATION THAT THE INFORMATION CONTAINED HEREIN IS COMPLETE.

THIS DISCLOSURE STATEMENT MAY NOT BE RELIED UPON FOR ANY PURPOSES OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN, AND NOTHING CONTAINED IN IT SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE ADVICE ON THE TAX OR OTHER LEGAL EFFECTS OF THE REORGANIZATION ON HOLDERS OF CLAIMS OR INTERESTS.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT, UNDER ANY CIRCUMSTANCES, CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE THE DISCLOSURE STATEMENT WAS COMPILED.

NO REPRESENTATIONS CONCERNING THE PLAN ARE AUTHORIZED BY ITS PROPONENT OTHER THAN AS SET FORTH IN THIS DISCLOSURE

STATEMENT. THE INFORMATION CONTAINED HEREIN CONCERNING THE PLAN HAS NOT BEEN THE SUBJECT OF A CERTIFIED AUDIT. ALL THE FINANCIAL INFORMATION WITH RESPECT TO THE DEBTOR WAS COMPILED FROM THE DEBTORS' RECORDS AND THE PROPONENT IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY.

CERTAIN OF THE INFORMATION AND ESTIMATES, BY THEIR NATURE, ARE FORWARD LOOKING, AND ESTIMATES AND ASSUMPTIONS MAY PROVE TO BE INACCURATE, SO THAT PROJECTIONS MAY BE MATERIALLY DIFFERENT FROM ACTUAL, FUTURE EXPERIENCE.

## ARTICLE XIV.
### Conclusion

Muldrow believes that the Plan represents a fair and feasible proposal for the reorganization of the business and ultimate disposition of Muldrow that will provide Creditors with a greater return than any other alternative and will allow Muldrow to continue to provide municipal and utility services to its citizens. Accordingly, Muldrow encourages Creditors to vote to accept the Plan.

[remainder of page left intentionally blank]

Dated this 30th day of September, 2010.

DOERNER, SAUNDERS, DANIEL &
ANDERSON, L.L.P.

*/s/ Chad J. Kutmas*

By: _____

Chad J. Kutmas, OBA No. 19505
Kassandra M. Bentley, OBA No. 21599
320 South Boston, Suite 500
Tulsa, OK 74103-3725
(918) 582-1211
(918) 591-5360 (Fax)

*Attorneys for the Town of Muldrow and Muldrow Public Works Authority*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 30, 2010, a true and correct copy of the foregoing pleading was served electronically on participants in the CM/ECF system according to local procedures and that a separate certificate of service will be filed if required.

*/s/ Chad J. Kutmas*

_____

Chad J. Kutmas

1874269v2

# EXHIBIT "A"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CASE NO. 05-71621 |
| TOWN OF MULDROW, | ) | CASE NO. 05-71622 |
| MULDROW PUBLIC WORKS | ) | |
| AUTHORITY, | ) | Jointly Administered Under |
| | ) | Case No. 05-71621 |
|     Debtors. | ) | |
| | ) | CHAPTER 9 |
| | ) | |

---

## FIRST PLAN OF ADJUSTMENT OF THE TOWN OF MULDROW AND THE MULDROW PUBLIC WORKS AUTHORITY
### Proposed by the Debtors

### September ____ , 2010

---

Chad J. Kutmas
Kassandra M. Bentley
DOERNER, SAUNDERS, DANIEL
& ANDERSON, L.L.P.
320 South Boston, Suite 500
Tulsa, Oklahoma 74103-3725
(918) 582-1211
(918) 591-5360 (Fax)

*Counsel for the Debtors*

# TABLE OF CONTENTS

ARTICLE 1    DEFINITIONS, CONSTRUCTION, AND INTERPRETATION ........................ 1

    1.1    Construction and Interpretation ........................................................... 1

    1.2    Plan Documents ................................................................................. 1

    1.3    Definitions ......................................................................................... 1

ARTICLE 2    CLASSIFICATION OF CLAIMS ....................................................... 4

    2.1    Claims Classified ............................................................................... 4

    2.2    Classification of Claims ..................................................................... 4

ARTICLE 3    IDENTIFICATION OF IMPAIRED CLASSES ................................... 4

    3.1    Impaired Classes of Claims ................................................................ 4

    3.2    Impairment Controversies ................................................................. 5

ARTICLE 4    TREATMENT OF ALLOWED CLAIMS ........................................... 5

    4.1    Class 1: Secured Claims ..................................................................... 5

    4.2    Class 2: Priority Non-Tax Claims ...................................................... 5

    4.3    Class 3: General Unsecured Claims .................................................... 5

    4.4    Class 4: ODEQ Claims ...................................................................... 5

    4.5    Class 5: OK Foods Claims ................................................................. 6

ARTICLE 5    PROVISION FOR TREATMENT OF UNCLASSIFIED CLAIMS .................... 6

    5.1    Treatment of Administrative Expenses and Fee Claims ....................... 6

ARTICLE 6    IMPLEMENTATION OF THE PLAN ................................................ 7

    6.1    Payment of Allowed Claims in Classes 1, 2, and 3 .............................. 7

    6.2    Claims in Classes 4 and 5 .................................................................. 7

ARTICLE 7    PROVISIONS GOVERNING DISTRIBUTIONS ................................. 7

    7.1    Distributions to Holders of Allowed Claims ....................................... 7

    7.2    Cash Payment ..................................................................................... 7

Case 05-71621    Doc 250    Filed 09/30/10    Entered 09/30/10 18:09:20    Desc Main
Document    Page 25 of 57

7.3    Delivery of Distributions; Undeliverable Distributions ............................................ 8

7.4    Time Bar to Cash Payments ..................................................................................... 8

7.5    No Distributions Pending Allowance ....................................................................... 8

7.6    De Minimis Distributions ......................................................................................... 8

7.7    Setoff ........................................................................................................................ 8

ARTICLE 8    RESOLVING CONTESTED CLAIMS UNDER THE PLAN ............................. 9

8.1    Objection Deadline ................................................................................................... 9

8.2    Prosecution of Objections to Claims ........................................................................ 9

8.3    Voting Rights of Holders of Contested Claims ....................................................... 9

ARTICLE 9    PROVISIONS GOVERNING EXECUTORY CONTRACTS ............................. 9

9.1    Rejected if not Assumed ........................................................................................... 9

ARTICLE 10  CONDITIONS PRECEDENT TO EFFECTIVE DATE OF THE PLAN .......... 10

10.1    Conditions Precedent to Effective Date of the Plan ................................................ 10

10.2    Waiver of Conditions .............................................................................................. 10

ARTICLE 11  EFFECT OF CONFIRMATION ON THE PLAN ............................................. 10

11.1    Title to and Vesting of Assets ................................................................................. 10

11.2    Discharge of Claims ................................................................................................ 10

11.3    Discharge of Debtors .............................................................................................. 11

11.4    Preservation and Prosecution of Causes of Action ................................................. 11

11.5    Term of Existing Injunctions or Stays .................................................................... 11

11.6    Injunctions ............................................................................................................... 12

11.7    Exculpation and Release ......................................................................................... 12

11.8    Dismissal of Pending Litigation .............................................................................. 13

ARTICLE 12  RETENTION OF JURISDICTION .................................................................... 13

12.1    Scope of Jurisdiction ............................................................................................... 13

12.2    Failure of Bankruptcy Court to Exercise Jurisdiction.......................................... 14

ARTICLE 13  MISCELLANEOUS PROVISIONS ........................................................................ 15

13.1    Insurance and Annuities........................................................................................ 15

13.2    Binding Effect of Plan ......................................................................................... 15

13.3    Governing Law .................................................................................................... 15

13.4    Modification of the Plan ...................................................................................... 15

13.5    Defaults of Holders of Claims ............................................................................. 15

13.6    Severability ......................................................................................................... 16

13.7    Closing the Case .................................................................................................. 16

## FIRST PLAN OF ADJUSTMENT OF THE TOWN OF MULDROW AND THE MULDROW PUBLIC WORKS AUTHORITY

The Town of Muldrow and the Muldrow Public Works Authority (the "Debtors"), by and through their counsel, propose the following First Plan of Adjustment of the Town of Muldrow and the Muldrow Public Works Authority (the "Plan") under Chapter 9 of the United States Bankruptcy Code (the "Bankruptcy Code"). Accompanying this Plan is a disclosure statement that has been approved by the Bankruptcy Court. The disclosure statement provides additional information to be considered in connection with this Plan.

Debtors are a municipality and municipal utility provider. This Plan provides for the continued provision of municipal and utility services upon Confirmation of this Plan.

## ARTICLE 1
## DEFINITIONS, CONSTRUCTION, AND INTERPRETATION

### 1.1 Construction and Interpretation

The Plan is a complete, whole, and integrated statement of the binding agreement between the Debtors and their creditors and parties-in-interest upon the matters contained herein. The capitalized terms used herein shall have their respective meanings as set forth in section 1.3 of this Article. Terms not defined shall have their meanings given to them by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), unless the context requires otherwise. It the event that terms are not defined in the foregoing authorities, the terms shall be given their ordinary dictionary meaning consistent with modern usage. The use of the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular article, section, subsection, or clause contained herein. Words denoting the singular in number shall include the plural number and vice versa, and words denoting one gender shall include the other gender. The headings and table of contents contained herein are for convenience only and shall not limit or otherwise modify the Plan.

### 1.2 Plan Documents

All exhibits and schedules hereto, whether they are submitted herewith or subsequently filed with United States Bankruptcy Court for the Eastern District of Oklahoma ("the Bankruptcy Court"), are incorporated into the Plan by this reference as though there were typed verbatim herein.

### 1.3 Definitions

1. *Administrative Expenses* shall mean an Allowed Claim for the cost or expense of administering the Chapter 9 Case under § 503(b) of the Bankruptcy Code, with the priority afforded in § 507(a)(2) of the Bankruptcy Code, including: (i) the actual, necessary costs and expenses incurred after the commencement of the Chapter 9 Case of preserving the estate and continuing operation of municipal services, including, without limitation, wages, salaries, or commissions; (ii) reimbursement of expenses awarded under § 1103 of the Bankruptcy Code; and (iii) all fees of the United States Trustee assessed against the Debtors.

Case 05-71621   Doc 250   Filed 09/30/10   Entered 09/30/10 18:09:20   Desc Main
Document   Page 28 of 57

2.      *Allowed Claims* shall mean a Claim, other than a Claim for Administrative Expenses, that has not been timely objected to in the Bankruptcy Court or a Claim that has been approved by a Final Order of the Court.  A Claim to be determined in a different forum, however, shall not be deemed allowed until it is determined by a Final Order of the alternate forum and allowed by Final Order of the Bankruptcy Court.

3.      *Bankruptcy Code* shall mean the Bankruptcy Reform Act of 1978, as amended and codified in 11 U.S.C. § 101 et seq.

4.      *Bankruptcy Court* shall mean the United States Bankruptcy Court for the Eastern District of Oklahoma.

5.      *Bankruptcy Rules* shall mean the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court pursuant to 28 U.S.C. § 2075.

6.      *Chapter 9 Case* shall mean the Chapter 9 bankruptcy case filed by the Town of Muldrow and the Muldrow Public Works Authority on April 21, 2005, Case No. 05-71621 and Case No. 05-71622, in the Bankruptcy Court.

7.      *Claims* shall mean a claim as defined in § 101(5) of the Bankruptcy Code, which includes any right to payment from Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, un-matured, contested, uncontested, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, un-matured, contested, uncontested, secured, or unsecured.

8.      *Confirmation Date* shall mean the date upon which the Court enters an order confirming the Plan in accordance with §§ 1129(a)(2), (3), (6), (8), and (10) and 1129(b)(1), (b)(2)(A), and (b)(2)(B) of the Bankruptcy Code.

9.      *Confirmation Hearing* shall mean the hearing on confirmation of the Plan held by the Bankruptcy Court pursuant to § 1128 of the Bankruptcy Code, scheduled for _____ ___ , 2010, and which may be continued from time-to-time.

10.     *Confirmation Order* shall mean the order entered by the Bankruptcy Court that confirms the Plan, whether or not such order constitutes a Final Order.

11.     *Contested Claims* shall mean a Claim or Claim for Administrative Expenses that is either: (i) listed in Debtors' schedules as disputed, contingent, or unliquidated regardless of whether a proof of claim has been filed; (ii) Debtors' schedules conflict with a proof of claim that has been filed; (iii) that was not listed in Debtors' schedules; or (iv) there is a pending objection to a Claim or Claim for Administrative Expenses that has not been resolved by agreement or an order of the Bankruptcy Court.  In the event, that any part of a Claim constitutes a Contested Claim, such Claim, in its entirety shall be deemed to constitute a Contested Claim for purposes of distribution under the Plan.

Case 05-71621    Doc 250    Filed 09/30/10    Entered 09/30/10 18:09:20    Desc Main
Document    Page 29 of 57

12.     *Debtors* shall mean Town of Muldrow and Muldrow Public Works Authority, debtor-in-possession, in Case No. 05-71621 and Case No. 05-71622, pending before the Bankruptcy Court.

13.     *Effective Date* shall mean a business day selected by the Debtors and their counsel that is at least 20 days after the Confirmation Order is entered by the Court and which all of the conditions precedent contained herein have been satisfied or waived.

14.     *Executory Contracts* shall mean any contract including without limitation, any unexpired lease, to which either of Debtors is a party and which is capable of being assumed or rejected pursuant to § 365 of the Bankruptcy Code.

15.     *Fee Claims* shall mean a Claim under §§ 503 and 1103 of the Bankruptcy Code for allowance and compensation and reimbursement of expenses in the Chapter 9 Case.

16.     *Final Decree* shall mean the order of the Bankruptcy Case closing the Chapter 9 Case.

17.     *Final Fee Application* shall mean the application of a Professional Person under § 503 or 1103 of the Bankruptcy Code for the final allowance of a Fee Claim.

18.     *Final Order* shall mean an order in which the time to appeal, petition for certiorari, or move for rehearing has expired; provided, however, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Bankruptcy Rule 9024 may be filed with respect to such order.

19.     *General Unsecured Claims* shall mean any Allowed Claim against Debtors that is not a Priority Claim, Secured Claim, Administrative Expense, or Subordinated Claim.

20.     *Initial Distribution Date* shall mean any business day within 30 days after payment of all timely filed Claims for Administrative Expenses.

21.     *Plan* shall mean this document and any exhibits attached hereto, either in its present form or as it may be altered, amended, modified, or supplemented from time-to-time in accordance with the provisions herein, the Bankruptcy Code, and the Bankruptcy Rules.

22.     *Professional Person* shall mean a person retained or to be compensated pursuant to §§ 503 or 1103 of the Bankruptcy Code.

23.     *Secured Claims* shall mean any Allowed Claim that is secured by collateral of Debtors, and which is properly perfected under Article 9 of the Uniform Commercial Code.

24.     *Subordinated Claims* shall mean any Allowed Claim that is subordinated by agreement or by order of the Bankruptcy Court.

25.     *United States Trustee* shall mean the Office of the United States Trustee for Region 20.

**ARTICLE 2**
**CLASSIFICATION OF CLAIMS**

**2.1    Claims Classified**

      For purposes of voting on the Plan and related confirmation matters, all claims ("Claims") shall be classified as set forth in this Article. The classification contained herein shall not apply to administrative expenses ("Administrative Expenses"). The Plan shall only provide for distribution to holders of allowed claims ("Allowed Claims"). Unless expressly indicated herein, nothing in the Plan shall provide for the allowance of any of the Claims.

**2.2    Classification of Claims**

      The Bankruptcy Code provides that holders of Claims are to be grouped into classes under a proposed plan and that they are to vote to accept or reject the proposed plan by class. Holders of Claims and Equity Interests that have more than one Claim in a single class shall have their Claims aggregated and treated as a single Claim. The Plan classifies and designates the Claims against Muldrow as follows:

        Class 1:      Secured Claims.

        Class 2:      Priority Non-Tax Claims.

        Class 3:      General Unsecured Claims.

        Class 4:      ODEQ Claims.

        Class 5:      OK Foods Claims.

Pursuant to § 1123(a)(1) of the Bankruptcy Code, Administrative Expenses shall not be classified for purposes of voting or receiving distributions under the Plan. Rather, all Administrative Expenses will be treated separately as unclassified Claims pursuant to the terms of Article 5 hereof.

**ARTICLE 3**
**IDENTIFICATION OF IMPAIRED CLASSES**

**3.1    Impaired Classes of Claims**

      The Bankruptcy Code only entitles holders of impaired Claims who receive some consideration under a proposed plan to vote to accept or reject the same. Holders of unimpaired Claims or Equity Interests, on the other hand, are conclusively presumed to have accepted a proposed plan and are not entitled to vote. Under the Plan, Classes 4 and 5 are impaired.

4

## 3.2 Impairment Controversies

Any controversy regarding whether a particular Claim, Equity Interest, or Class is impaired under the Plan shall be decided by the Bankruptcy Court after notice and hearing.

## ARTICLE 4
## TREATMENT OF ALLOWED CLAIMS

## 4.1 Class 1: Secured Claims

Class 1 shall consist of all Allowed Claims secured by collateral of the Debtors ("Secured Claims"). Class 1 Claims, if any, have already been or shall be paid in full in the ordinary course of Debtors' business. Class 1 is not impaired, and the holders of Class 1 Claims are deemed to have accepted the Plan. The Bankruptcy Code provides that a Claim of a Creditor that holds a security interest or lien on the property of a debtor is a "secured claim" only to the extent that there is value in the collateral available to that Creditor. The only secured claim that may be outstanding is that of Armstrong Bank, which is Class 1 of the Plan, respectively.

## 4.2 Class 2: Priority Non-Tax Claims

Class 2 shall consist of all Allowed Claims for priority non-tax Claims against the Debtors ("Priority Non-Tax Claims"). Each holder of a Class 2 Claim has already been or shall be paid in full in the ordinary course of Debtors' business. Debtors do not believe that any such claims remain unpaid.

## 4.3 Class 3: General Unsecured Claims

Class 3 shall consist of all Allowed Claims for general unsecured Claims, other than those in Class 4 and Class 5 below, against the Debtors ("General Unsecured Claims"). Each holder of a Class 3 Claim has already been or shall be paid in full in the ordinary course of Debtors' business. Debtors do not believe that any such claims remain unpaid.

## 4.4 Class 4: ODEQ Claims

Class 4 shall consist of all administrative penalty Claims and other Claims of the Oklahoma Department of Environmental Quality ("ODEQ") against Debtors, which will be dismissed by ODEQ upon approval of the Plan and discharged pursuant to the Plan. In return for such release and discharge, Debtors will comply with the following requirements:

1. Submit approvable plans and specifications ("P&S"), an application for a construction permit, and the associated fees for the construction proposed in the approved engineering report already submitted to ODEQ by Debtors. All proposed construction must comply with OAC 252:656. This task must be completed by June 1, 2011.

2. Begin construction in accordance with approved P&S from Task 1. All construction must comply with OAC 252:656. This task must be completed by December 1, 2011.

5

3.    Complete construction in accordance with approved P&S from Task 1. All construction must comply with OAC 252:656. Debtors shall notify DEQ in writing about the completion date in sufficient time that DEQ can attend and participate in the final construction inspection. This task must be completed by December 1, 2012.

4.    Attain three (3) consecutive months of compliance with the OPDES Permit. This task must be completed by July 1, 2013.

## 4.5    Class 5:    OK Foods Claims

Class 5 shall consist of all Claims of OK Foods, Inc., against Debtors, including any claims for cancellation of prior executory contracts for the provision of water and wastewater services to OK Foods, Inc., by Debtors. All such prior contracts between Debtors and OK Foods, Inc., shall be deemed void and superseded by that Agreement for Sale and Purchase of Water and Wastewater Services, effective date April 1, 2010 ("Agreement"), attached hereto as Exhibit 1. OK Foods shall, in return for Muldrow's entrance into the Agreement, release all of its Claims against Debtors, which Claims shall be discharged pursuant to the terms of this Plan. In approving this Plan, the Bankruptcy Court also approves the Agreement as a settlement and compromise pursuant to Bankruptcy Rule 9019.

## ARTICLE 5
## PROVISION FOR TREATMENT OF UNCLASSIFIED CLAIMS

## 5.1    Treatment of Administrative Expenses and Fee Claims

All Administrative Expenses and fee claims ("Fee Claims") incurred by Debtors shall be treated as follows:

1.    *Time for filing Claims for Administrative Expenses.* The holder of a Claim for Administrative Expenses, other than a Fee Claim, must file with the Bankruptcy Court and serve on the Debtors and their counsel notice of such Claim within 30 days following the confirmation date ("Confirmation Date") of the Plan. Such notice must include, at minimum, the following information: (i) the name of the holder of the Claim for Administrative Expenses; (ii) the amount of the Claim for Administrative Expenses; and (iii) the basis of the Claim for Administrative Expenses. Failure to file and serve this notice timely and properly shall result in the denial of a holder's Claim for Administrative Expenses, which shall be treated as forever barred and discharged.

2.    *Time for Filing Fee Claims.* Each professional person ("Professional Person") employed the Debtors that holds or asserts a Fee Claim will be paid by Muldrow in the ordinary course of business consistent with the Debtors' course of dealing with their professionals. There is no requirement that professionals file a fee application for approval of their fees under Chapter 9 of the Bankruptcy Code.

3.    *Allowance of Claims for Administrative Expenses and Fee Claims.* Claims for Administrative Expenses, which have been properly filed and served pursuant to the provisions

contained herein, shall be considered allowed only to the extent approved by order of the Bankruptcy Court.

4. *Payment of Claims for Administrative Expenses and Fee Claims.* Unless otherwise ordered by the Bankruptcy Court, holders of Allowed Claims for Administrative Expenses, other than Fee Claims, shall receive a distribution of either (i) the amount of such Claim in a single payment on the Initial Distribution Date, or as soon as practicable thereafter, or (ii) such other treatment as may be agreed upon in writing by the Debtors and their counsel and the holder of such Claim.

## ARTICLE 6
## IMPLEMENTATION OF THE PLAN

### 6.1 Payment of Allowed Claims in Classes 1, 2, and 3

Holders of Claims in Classes 1, 2, and 3 have either already been paid, will be paid by the Debtors on the Initial Distribution Date or as soon as practicable thereafter, or, if not then due, in the ordinary course of business as they come due.

### 6.2 Claims in Classes 4 and 5

Debtors have settled their Disputed Claims with OK Foods, Inc. In exchange for the release of all OK Foods, Inc.'s Claims, Debtors and OK Foods have entered into the Agreement, effective date April 1, 2010, attached hereto as Exhibit 1. Debtors and OK Foods have already begun performance under the Agreement and will continue said performance after the Effective Date of the Plan. In exchange for the release of all of its Claims, ODEQ will accept Debtors' prospective performance, by the dates listed therein, of the four tasks set forth in Section 4.4 above. Debtors have already begun efforts to complete these tasks and will complete said tasks on the dates set forth above.

## ARTICLE 7
## PROVISIONS GOVERNING DISTRIBUTIONS

### 7.1 Distributions to Holders of Allowed Claims

On the Initial Distribution Date, or as soon as practicable thereafter, the Debtors shall make distributions to holders of Allowed Claims in the ordinary course of business pursuant to the provisions of the Plan. For purposes of calculating distributions, all contested claims ("Contested Claims") will be treated as though they are allowed in the amounts asserted or as estimated by the Bankruptcy Court pursuant to § 502(c) of the Bankruptcy Code.

### 7.2 Cash Payment

All distributions shall be made in the form of cash payments ("Cash Payments") in United States Dollars and be drawn on a domestic bank, or by wire transfer from a domestic bank.

7

### 7.3 Delivery of Distributions; Undeliverable Distributions

Pursuant to Bankruptcy Rule 9010, distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on their proof of claim or the last known address of such holder if no proof of claim was filed. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtors are notified of such holder's current address, at which time all missed distributions shall be made to such holder without interest. Undeliverable distributions shall be returned to the Debtors until such distributions are claimed. All requests for undeliverable distributions shall be made on or before the later of (i) the first anniversary of the Effective Date or (ii) within 60 days after the distribution was attempted by the Debtors. After such date, all unclaimed distributions shall revert to the Debtors, and the Allowed Claim of any holder with respect to such distributions shall be treated as forever barred and discharged.

### 7.4 Time Bar to Cash Payments

Cash Payments drawn on a checking account of a domestic bank shall be null and void if not negotiated within 60 days after the date of the issuance thereof. Requests for re-issuance of any check shall be made to the Debtors by the holder of the Allowed Claim with respect to which such check was originally issued. A request for the re-issuance of a null and void check shall be made on or before the later of (i) the first anniversary of the Effective Date or (ii) within 60 days after the date of issuance of such check. After such date, the Allowed Claim of any holder with respect to such null and void checks shall be treated as forever barred and discharged.

### 7.5 No Distributions Pending Allowance

The Debtors shall not make any distribution to the holder of a Contested Claim unless and until it is determined to be allowed by order of the Bankruptcy Court.

### 7.6 De Minimis Distributions

The Debtors shall not be required to make any distribution of less than $25 to any holder of an Allowed Claim unless such distribution is the final distribution for such Claim.

### 7.7 Setoff

In the event that the Debtors have a claim against the holder of an Allowed Claim, the Debtors may setoff against the Allowed Claim, subject to § 553 of the Bankruptcy Code. Neither the failure to setoff nor the allowance of a Claim under the Plan shall constitute a waiver or release by Debtors of any claim that Debtors have against the holder of an Allowed Claim. No holder of an Allowed Claim, however, shall be able to setoff, suspend, freeze, or recoup any amount from funds and other payments that such holder may owe to Debtors. The Confirmation Order shall constitute an injunction preventing such setoff, suspension, freeze, or recoupment.

# ARTICLE 8
## RESOLVING CONTESTED CLAIMS UNDER THE PLAN

### 8.1    Objection Deadline

The Debtors shall file with the Bankruptcy Court and serve all objections to Claims within three months of the Effective Date of the Plan, unless extended by order of the Bankruptcy Court.

### 8.2    Prosecution of Objections to Claims

Expect as otherwise ordered by the Bankruptcy Court, the filing, litigation, settlement, or withdrawal of all objections to Contested Claims after the Effective Date of the Plan may be performed by the Debtors.  The compromise or settlement of any objections to Contested Claims after the Effective Date of the Plan shall be subject to the approval of the Bankruptcy Court pursuant to Bankruptcy Rule 9019 after providing notice to any party who requests notice in writing.

### 8.3    Voting Rights of Holders of Contested Claims

Pursuant to Bankruptcy Rule 3018(a), the holder of a Contested Claim will not be counted for the purpose of voting on the Plan to the extent it is disputed, unless after notice and hearing, the Bankruptcy Court enters an order temporarily allowing the Contested Claim for voting purposes.  The denial of voting rights herein shall not prejudice the holders of Contested Claims seeking to have their Contested Claims allowed for purposes of distribution under the Plan.

# ARTICLE 9
## PROVISIONS GOVERNING EXECUTORY CONTRACTS

### 9.1    Rejected if not Assumed

The Plan and conditions herein shall constitute a motion by Debtors to assume all executory contracts ("Executory Contracts"), including, but not limited to, unexpired leases, to which either of Debtors is a party and which have not on or before the Confirmation Date been (i) previously rejected or assumed by order of the Bankruptcy Court or (ii) included in a pending motion to assume or reject made by Debtors, except that those contracts between Debtors which are deemed void and superceded by the Agreement as set forth in section 4.5 hereof shall not be assumed.  Nothing herein, however, shall be deemed to extend any deadline previously set by the Bankruptcy Court for filing a Claim against Debtors and any Claims for rejection damages.  If no deadline was set by the Court, a party to a rejected executory contract shall file a claim no later than 30 days after the Confirmation Order.  Failure to file such a Claim shall result in the denial of a holder's Claim for rejection damages, which shall be treated as forever barred and discharged.

9

# ARTICLE 10
## CONDITIONS PRECEDENT TO EFFECTIVE DATE OF THE PLAN

### 10.1 Conditions Precedent to Effective Date of the Plan

The Plan shall not become effective unless and until the Effective Date of the Plan occurs. The Effective Date of the Plan is subject to the following conditions precedent: (i) the Confirmation Order shall become a final order ("Final Order"); (ii) all documents useful and necessary to effectuating the Plan are executed and delivered to the parties hereto and all conditions to the effectiveness of such documents have been met; and (iii) the Debtors and their counsel have received all authorizations, consents, approvals, rulings, opinions, and documents that are necessary to implement the Plan.

### 10.2 Waiver of Conditions

The conditions precedent to the Effective Date of the Plan may be waived, in whole or in part, by the Debtors and their counsel, at any time, without notice, and without an order from the Bankruptcy Court or any other affirmative action other than proceeding to consummate the Plan. The failure of the Debtors and their counsel to exercise any of foregoing rights shall not be deemed a waiver of any other rights and each right shall be deemed an ongoing right that may be asserted at anytime.

# ARTICLE 11
## EFFECT OF CONFIRMATION ON THE PLAN

### 11.1 Title to and Vesting of Assets.

Although no Estate is established in a Chapter 9 proceeding for the avoidance of debt, on the Effective Date, as set forth in sections 1141(b) and (c) of the Bankruptcy Code, all property of the estates of the Debtors shall vest in Muldrow and the Muldrow Public Works Authority, free and clear of all Claims, Liens, encumbrances, and other interests, except as provided herein, and the Confirmation Order shall be a judicial determination of discharge of the liabilities of the Debtors and the Debtors in Possession except as provided in the Plan. From and after the Effective Date, Muldrow and the Muldrow Public Works Authority may operate and may use, acquire, and dispose of property free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as provided herein.

### 11.2 Discharge of Claims

Except as otherwise provided in the Plan or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder shall be in exchange for and in complete satisfaction and discharge of all existing debts and Claims of any kind, nature, or description whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors or any of their assets or properties to the fullest extent as set forth in section 1141 of the Bankruptcy Code. Except as provided in the Plan, on the Effective Date, all existing Claims against the Debtors shall be, and shall be deemed to be satisfied and discharged, and all holders of Claims shall be precluded and enjoined from

asserting against Muldrow and the Muldrow Public Works Authority, or any of their respective assets or properties, any other or further Claim based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim.

## 11.3  Discharge of Debtors

Upon the Effective Date and in consideration of the consideration to be made hereunder, except as otherwise expressly provided herein, the Debtors shall be discharged of all Claims, rights, and liabilities that arose prior to the Effective Date, to the fullest extent as set forth in section 1141 of the Bankruptcy Code.  Upon the Effective Date, all Persons and Entities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from asserting against the Debtors, or their respective successors or assigns, including, without limitation, Muldrow and the Muldrow Public Works Authority or their respective asset properties or interests in property, any discharged Claim in the Debtors, any other or further Claims, based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not the facts or legal bases therefore were known or existed prior to the Confirmation Date regardless of whether a proof of Claim was filed, whether the holder thereof voted to accept or reject the Plan, or whether the Claim is an Allowed Claim.

## 11.4  Preservation and Prosecution of Causes of Action

In accordance with section 1123(b) of the Bankruptcy Code, the Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all causes of action, and the Debtors' rights to commence, prosecute, or settle such causes of action shall be preserved notwithstanding the occurrence of the Effective Date.  The Debtors may pursue the causes of action, as appropriate, in accordance with the best interests of the Debtors.  No entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any cause of action against them as any indication that the Debtors will not pursue any rights to prosecute any and all causes of action against any Entity, except as otherwise expressly provided herein. Unless any causes of action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Debtors expressly reserve all causes of action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppels, issue preclusion, claim preclusion, estoppels (judicial, equitable, or otherwise), or laches, shall apply to such causes of action upon, after, or as a consequence of the Confirmation Order.  The Debtors reserve and shall retain the causes of action notwithstanding the rejection of any executory contract or unexpired lease during the Chapter 9 Cases or pursuant to the Plan.  The Debtors shall have the exclusive right, authority and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any retained causes of action and to decline to do any of the foregoing with the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

## 11.5  Term of Existing Injunctions or Stays

Unless otherwise provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 9 Cases pursuant to sections 922 or 362 of the Bankruptcy Code, or otherwise, and in existence on the

Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in such applicable order.

## 11.6 Injunctions

**EXCEPT AS PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, ALL PERSONS OR ENTITIES WHO HAVE HELD, CURRENTLY HOLD, OR MAY HOLD A DEBT OR CLAIM, OTHER THAN A FEE CLAIM OR A CLAIM FOR ADMINISTRATIVE EXPENSES, WHICH AROSE BEFORE THE EFFECTIVE DATE OF THE PLAN, ARE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS ON ACCOUNT OF ANY SUCH DEBT OR CLAIM: (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING AGAINST THE DEBTORS OR AGAINST THE DEBTORS' PROPERTY; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTORS OR AGAINST THE DEBTORS' PROPERTY; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE AGAINST THE DEBTORS OR AGAINST THE DEBTORS' PROPERTY; (IV) ASSERTING ANY SETOFF, RIGHT OF SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE TO THE DEBTORS; AND (V) COMMENCING OR CONTINUING ANY ACTION, IN ANY MANNER, IN ANY PLACE THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN OR THE CONFIRMATION ORDER. THE CONFIRMATION ORDER SHALL CONSTITUTE SUCH AN INJUNCTION. ANY PERSON OR ENTITY INJURED BY ANY WILLFUL VIOLATION OF SUCH INJUNCTION SHALL RECOVER ACTUAL DAMAGES, INCLUDING ATTORNEYS' FEES AND COSTS, AND, IN APPROPRIATE CIRCUMSTANCES, MAY RECOVER PUNITIVE DAMAGES FROM THE WILLFUL VIOLATOR.**

## 11.7 Exculpation and Release

The Debtors shall not have or incur any liability to any holder of a Claim for any act, event, or omission in connection with, or arising out of, the Chapter 9 case ("Chapter 9 Case"), the confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence. This exculpation and release shall be effective on the Effective Date of the Plan, without further need of documentation. As used in this section, claims shall include disputes, Claims, debts and liabilities, causes of action, counterclaims, demands, controversies, costs, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, executions of any nature, type, or description, avoidance actions, negligence, gross negligence, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, control, interference with contractual and business relationships, conflicts of interest, misuse of insider information, concealment, disclosure, secrecy, misuse of collateral, wrongful release of collateral, failure to inspect, environmental liability, violations of statutes and regulations of governmental entities, instrumentalities and agencies (both civil and criminal), racketeering activities, securities and antitrust laws violations, tying arrangements, deceptive trade practices, breach or abuse of fiduciary duty, breach of an alleged special relationship, course of conduct or

12

dealing, obligation of fair dealing, obligation of good faith, and obligation of good faith and fair dealing, whether at law or in equity, in contract or in tort, or otherwise, known or unknown, suspected or unsuspected.

## 11.8 Dismissal of Pending Litigation

On the Effective Date of the Plan, all lawsuits, litigation, administrative actions, or other proceedings, judicial or administrative, in connection with the assertion of a Claim against the Debtors shall be dismissed as to Debtors, except Claims and/or objections thereto pending in the Bankruptcy Court. Such dismissal shall be with prejudice to the assertion of such Claim in any manner other than as prescribed by the Plan. **ALL PARTIES TO ANY SUCH ACTION SHALL BE ENJOINED BY THE BANKRUPTCY COURT IN THE CONFIRMATION ORDER FROM TAKING ANY ACTION TO IMPEDE THE IMMEDIATE AND UNCONDITIONAL DISMISSAL OF SUCH ACTIONS. ALL LAWSUITS, LITIGATION, ADMINISTRATIVE ACTIONS, OR OTHER PROCEEDINGS, JUDICIAL OR ADMINISTRATIVE, IN CONNECTION WITH THE ASSERTION OF A CLAIM BY DEBTORS AGAINST OK FOODS, INC. OR OKLAHOMA DEPARTMENT OF ENVIRONMENTAL QUALITY SHALL LIKEWISE BE DISMISSED.** All other lawsuits, litigation, administrative actions, or other proceedings, judicial or administrative, in connection with the assertion of a Claim by Debtors shall remain in place only with respect to the Claim asserted by Debtors, and shall remain Debtors' Property that the Debtors may prosecute, settle, compromise, or dismiss pursuant to the provisions herein.

## ARTICLE 12
## RETENTION OF JURISDICTION

## 12.1 Scope of Jurisdiction

The Bankruptcy Court, pursuant to 28 U.S.C. § 1334 shall retain and have jurisdiction over all matters arising in, arising under, and related to the Chapter 9 Case and the Plan pursuant to and for the purposes of § 1142(b) of the Bankruptcy Code for the following:

1.      To hear and determine pending applications for the assumption or rejection of Executory Contracts and the allowance of Claims resulting therefrom;

2.      To hear and determine any and all adversary proceedings, applications, and contested matters, including any remands from appeals;

3.      To ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

4.      To hear and determine any timely objections to or applications concerning Claims or the allowance, classification, priority, estimation, or payment of any Claim;

5.      To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

6. To enter and implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder;

7. To consider any modification to the Plan pursuant to § 1127 of the Bankruptcy Code, to cure a defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

8. To hear and determine all Fee Claims and their concomitant fee applications;

9. To hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan;

10. To enter and implement orders or take such other actions as may be necessary to appropriate to restrain interference by any party with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions provided for in the Plan and Confirmation Order;

11. To authorize distributions to the holders of Claims, and to adjudicate any disputes regarding such distributions;

12. To enter such orders, including injunctions, as are necessary to enforce the title, rights, and powers of the Debtors;

13. To recover all assets of Debtors, wherever located;

14. To hear and determine litigation designed to marshal the assets of Debtors;

15. To correct any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan, and to approve any amendments to the Plan upon the motion of the Debtors;

16. To hear and determine any other matter not inconsistent with the Bankruptcy Code that may arise in connection with or related to the Plan; and

23. To enter a final decree ("<u>Final Decree</u>") closing the Chapter 9 Case.

## 12.2 Failure of Bankruptcy Court to Exercise Jurisdiction

If the Bankruptcy Court abstains from exercising, or declines to exercise jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 9 Case, such abstention shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by other courts with respect to such matters.

## ARTICLE 13
## MISCELLANEOUS PROVISIONS

### 13.1   Insurance and Annuities

Confirmation of the Plan shall have no effect on insurance policies and annuities of Debtors in which either Debtor is or was an insured party.  Debtors shall remain the insured parties under such polices, unless such policies are otherwise assigned. The Confirmation Order shall constitute an injunction preventing an insurance company from denying, altering, or delaying coverage on any basis regarding or related to the Chapter 9 Case, the Plan, or any provision contained therein.

### 13.2   Binding Effect of Plan

The Plan shall be binding upon and inure to the benefit of Debtors, and the holders of Claims, and their successors and assigns; provided, however, that if the Plan is not confirmed, the Plan shall be deemed null and void and nothing contained herein shall be deemed to: (i) constitute a waiver or release of any Claims by Debtors or any other person; (ii) prejudice in any manner the rights of Debtors or any other party-in-interest; or (iii) constitute an admission by Debtors or any other party-in-interest.

### 13.3   Governing Law

Unless a rule of law or procedure is supplied by federal law, including, but not limited to, the Bankruptcy Code and the Bankruptcy Rules, the laws of the state of Oklahoma shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan or the Chapter 9 Case.

### 13.4   Modification of the Plan

Modification of the Plan may be proposed in writing by the Debtors and their counsel at any time prior to the Confirmation Date of the Plan, provided that the Plan, as modified, meets the requirements of §§ 1122 and 1123(a)(1-5), (b), and (d) of the Bankruptcy Code and that the Debtors and their counsel have complied with § 1125 of the Bankruptcy Code.  The Plan may be modified at any time after the Confirmation Date and before substantial consummation by the Debtors and their counsel, provided that: (i) the Plan, as modified, meets the requirements of §§ 1122 and 1123(a)(1-5), (b), and (d) of the Bankruptcy Code; (ii) the Bankruptcy Court, after notice and hearing, confirms the Plan as modified under § 1129 of the Bankruptcy Code; and (iii) the circumstances warrant such modification.  A holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes his or her previous acceptance or rejection.

### 13.5   Defaults of Holders of Claims

Any act or omission by a holder of a Claim that contravenes the provisions provided for herein shall be deemed an event of default.  Upon an event of default, Debtors may seek to hold the defaulting party in contempt of the Confirmation Order.  If such holder of a Claim is found to

be in default under the Plan, such party shall pay the reasonable attorneys' fees and costs of Debtors in pursing such matter. Moreover, upon finding of such default, the Bankruptcy Court may designate a party to appear, sign, and accept the documents required under the Plan on behalf of the defaulting party in accordance with Bankruptcy Rule 7070 or make such other order as may be equitable and which does not materially alter the terms of the Plan, as confirmed.

### 13.6    Severability

In the event that a provision herein is found unenforceable by the Bankruptcy Court, the Debtors and their counsel may modify the Plan to remedy the problem or conflict. Such a determination of unenforceability shall not limit or effect the enforceability of any other provisions contained herein or require the re-solicitation of any acceptance or rejection of the Plan.

### 13.7         Closing the Case

Upon closing of all transactions anticipated on the Effective Date of the Plan, the Plan shall be deemed substantially consummated. Upon motion made only by the Debtors, a Final Decree shall be entered by the Bankruptcy Court. The Court may close the Chapter 9 Case, but retain jurisdiction to decide: (i) any pending adversary proceedings; (ii) applications and contested matters, including remands from appeals; (iii) any pending objections to Contested Claims or the allowance thereof, including disputes with respect to the classification, priority, estimation, or payment of such Claim; and (iv) any and all pending applications required for Fee Claims.

Dated this ____ th day of _____ , 2010:


_____
Chad J. Kutmas
Kassandra M. Bentley
DOERNER, SAUNDERS, DANIEL
& ANDERSON, L.L.P.
320 South Boston, Suite 500
Tulsa, Oklahoma 74103-3725
(918) 582-1211
(918) 591-5360 (Fax)


1821272v2

# EXHIBIT 1

Exhibit 1 to the Plan of Adjustment

FINAL

AGREEMENT
FOR SALE AND PURCHASE
OF WATER AND WASTEWATER SERVICES

THIS AGREEMENT is made effective the 1st day of April, 2010, by and between the Muldrow Public Works Authority, a public trust created by a written Trust Indenture for the use and benefit of the Town of Muldrow, hereinafter referred to as the "Authority", and O.K. Foods, Inc., hereinafter referred to as "Customer". This Agreement is approved by the Town of Muldrow's Board of Directors, but the Town is not separately liable upon it.

WITNESSETH:

WHEREAS, the Authority owns and operate a Publicly Owned Treatment Works ("POTW") as defined in 40 C.F.R. § 403.3(q) and in Oklahoma Administrative Code ("OAC") 252:623-1-4, such POTW being located in the Town of Muldrow, Sequoyah County, Oklahoma;

WHEREAS, the Customer owns and operates an industrial facility in the Town of Muldrow, and desires to use the POTW on a fee basis;

WHEREAS, the Authority will allow Customer to use the POTW, provided that Customer complies with the conditions contained herein;

WHEREAS, the Authority's POTW will receive the improvements set forth in Option 3 of the Tetra Tech proposal, attached hereto as Exhibit "A", in part in order to accommodate the Customer's wastewater treatment needs;

WHEREAS, the Authority also owns and operates a water treatment plant with a capacity currently capable of serving the present customers of the Authority and the contract demand of Customer;

WHEREAS, the Customer requires a supply of treated water;

WHEREAS, the Customer desires to purchase treated water from the Authority, and the Authority desires to furnish and sell treated water to the Customer; and

WHEREAS, by motion duly made an passed by the Muldrow Public Works Authority Board of Trustees on the 1st day of April, 2010, the purchase of water and wastewater services by the Customer from the Authority in accordance with this Agreement was approved and execution of this Agreement carrying out the provisions thereof was authorized by the Authority's Board of Trustees and by the Town's Board of Directors;

NOW, THEREFORE, the premises considered, and in consideration of the mutual covenants and agreements herein contained, and subject to all terms and conditions hereof, the parties hereto agree as follows:

1.    **DEFINITIONS AND ABBREVIATIONS**.

A.    Unless otherwise provided herein, abbreviations and terms used herein shall have the same meaning as set forth in OAC 252:623-1-3 and OAC 252:623-1-4.

B.    Unless the context requires otherwise, the following terms have the definitions ascribed to them in this subsection throughout this Agreement:

(i)    Administrator: The term "Administrator" shall mean the administrator of the Authority, or his duly authorized deputy, agent, or representative.

(ii)    Allowable Discharge: The term "Allowable Discharge" shall mean those wastewater discharges by Customer into the POTW which comply with the specifications set forth in Sections 7. and 8. below.

(iii)    Minimum Usage: The term "Minimum Usage" shall have the meaning ascribed thereto in Section 10.C.

(iv)    Modified SIU Wastewater Discharge Permit: The term "Modified SIU Wastewater Discharge Permit" shall have the meaning ascribed thereto in Section 8.

(v)    Monthly Average Daily Volume. Monthly Average Daily Volume shall mean a total volume of water or wastewater which over the course of a calendar month equals the number of days within the calendar month times the average daily volume specified. In such calculations, any day's or days' consumption may exceed the specified daily volume, but the consumption across the entire month may not exceed the maximum calculated as specified.

(vi)    ODEQ: The term "ODEQ" shall mean the Oklahoma Department of Environmental Quality.

(vii)    Uncontrollable Force: The term "Uncontrollable Force" shall mean any cause beyond the control of the party affected, including, but not limited to, failure of equipment, facilities or water supply, flood, earthquake, storm, below freezing temperatures, lightening, fire, epidemic, war, riot, civil disturbance, labor disturbance, sabotage, act of terrorism, or restraint by court or state or federal authority, not including any municipal authority.

(viii)    Wastewater Delivery Point: The term "Wastewater Delivery Point" shall mean the point located near Customer's industrial facility, where Customer's sewer line intersects with the Authority's sewer gathering line, provided, that if another location for the delivery of Customer's discharge into the POTW is specified in Customer's Modified SIU Wastewater Discharge Permit, issued pursuant to 27A O.S. § 2-6-201 et seq., the "Wastewater Delivery Point" shall be the location so specified in the permit.

2

(ix)   <u>Water Delivery Point</u>: The term "Water Delivery Point" shall mean the point of Customer's tap on Authority's main supply line at or near Customer's property boundary line.

2.   **EFFECTIVE DATE**. The "Effective Date" is April 1, 2010.

3.   **RELATIONSHIP OF PARTIES**. The parties hereto are supplier, the Authority, and customer, the Customer. Nothing herein shall be interpreted to constitute a partnership, joint venture, or relationship of principal and agent. Pursuant to this Agreement, Authority shall sell water and extend wastewater treatment services to the Customer, in return for rates established and in accordance with terms contained herein.

4.   **PROVISIONS GOVERNING CUSTOMER'S DISCHARGE**. All discharges by Customer into the Authority's POTW from and after the Effective Date shall be subject to the terms of Customer's Modified SIU Wastewater Discharge Permit.

5.   **SERVICE**.

   A.   Subject to all terms and conditions of this Agreement, the Authority agrees to sell to the Customer and deliver to Customer's Water Delivery Point such volume of filtered, chlorinated water as Customer shall require, up to but not in excess of a Monthly Average Daily Volume of 220,000 gallons, and the Authority's obligation to deliver shall be complete upon delivery of such treated water to Customer's Water Delivery Point. The Authority represents that such water will be treated to meet applicable standards for drinking (potable) water established by federal and state authorities.

   B.   Subject to all terms and conditions of this Agreement and provided the Customer complies with the requirements of the Modified SIU Wastewater Discharge Permit and this Agreement, the Authority agrees to accept into the POTW at the Wastewater Delivery Point and treat the Customer's wastewater discharge.

6.   **SUBSEQUENT MATTERS**. The Authority may, at its own cost, construct a manhole and monitoring station, on land belonging to the Customer, for the purpose of accessing and testing Customer's wastewater after it has been pretreated and before it is discharged into the Authority's collection system at the Wastewater Delivery Point, and Customer shall grant to Authority a license to build said manhole and monitoring station on Customer's property and to access same. Said license shall continue, irrevocable, for the term of this Agreement and any renewal or extension thereof. The manhole will be sited so as to assure that only pre-treated process wastewater is accessed and tested, without admixture of sanitary sewer wastewater from the Customer's plant and offices. The Authority may take 24-hour composite samples (not grab samples) for sampling B.O.D. and T.S.S., and may sample for other parameters in the Modified SIU Wastewater Discharge Permit as required in the permit, from this manhole and monitoring station for purposes of testing. The Customer may observe the taking of any samples and is entitled to a split sample for testing. All sampling and testing by the Authority will be performed at the expense of the Authority.

7. **MAXIMUM VOLUME OF CUSTOMER'S ALLOWABLE DISCHARGE**. The maximum volume of Allowable Discharge from Customer to the Authority's POTW is a Monthly Average Daily Volume of 150,000 gallons, but in no case more than 200,000 gallons in any one day, save for Acts of God or Uncontrollable Force.

8. **SPECIFICATION OF CUSTOMER'S ALLOWABLE DISCHARGE**.

    A.    The Allowable Discharge which Customer is authorized under this Agreement to discharge at the Wastewater Delivery Point into the POTW shall consist solely of the allowable discharge under Customer's current SIU Wastewater Discharge Permit, No.OKP003016, attached hereto as Exhibit "B," with the following exceptions:

        (i)    The B.O.D. discharge limit shall be reduced to 500 lbs. B.O.D. per day maximum for any single day.

        (ii)    The T.S.S. discharge limit shall be reduced to 500 lbs. T.S.S. per day maximum for any single day.

        (iii)    The pH of such discharge shall be limited as set forth in the permit attached hereto as Exhibit "B."

    B.    Customer hereby agrees to alter its current SIU Wastewater Discharge Permit, No. OKP003016 issued by ODEQ, to reduce the limits therein to those specified in Section 8.A. above within a reasonable time. The proposed permit, with the alterations stated in Section 8.A. shall be the "Modified SIU Wastewater Discharge Permit," and shall limit the Allowable Discharge as described in Section 8.A. above for the entire term of this Agreement, irrespective of the date of the new permit's issuance by ODEQ.

9. **AUTHORITY'S REGULATORY COMPLIANCE DUTIES**. Upon executing this Agreement, Authority shall promptly proceed to construct improvements to its publicly-owned treatment works, as outlined in Option #3 of the Tetra Tech proposal attached hereto as Exhibit "A." Authority shall construct these improvements and operate its POTW within the limits of any NPDES permit applicable to the POTW and enforceable by the ODEQ.

10. **RATES**.

    A.    Subject to any adjustments allowed in Paragraph 13, infra, Customer agrees to pay $5.75 per 1,000 gallons of water metered as a aggregate charge for water and wastewater service.

    B.    The Authority may increase this rate per 1,000 gallons by 3% annually, in its sole discretion.

    C.    In order to cover part of the costs of the improvements described in Exhibit "A" and regardless of usage, Customer agrees to pay for a minimum of Forty-Two Million (42,000,000) gallons each year ("Minimum Usage"). In the event Customer uses less than the Minimum Usage in any calendar year, the Authority shall charge

4

Customer for the unused portion of the Minimum Usage in its bill for December of said year, and Customer shall pay for said unused portion as if it had used the Minimum Usage in that year.

D.    In the event that Customer's facility is prevented from operation by Acts of God or other Uncontrollable Force which prevents operations for ten (10) or more business days (Monday through Friday, excluding national holidays) in any one calendar year, Customer's Minimum Usage shall be decreased by 200,000 gallons per day for each day in which operations were prevented, including the first ten (10) business days.

11.    **PAYMENT**.

A.    Payment of all charges under the provisions of this Agreement shall be made at the main office of the Authority within fifteen (15) days after the date the bill is mailed to the Customer. The bill shall specify the volumes used and the rate applied. If payment is not made within said 15 days, the Authority will send a reminder notice by certified mail, return receipt requested, that payment has not been received. If payment is not received by the Authority within 15 days after Customer's receipt of the notice of non-payment, a late payment finance charge will be imposed at a single periodic rate of 0-5/6% per month (annual percentage rate of 10%) on the past due amount, accrued from the date of billing, and on all amounts thereafter accruing, until the same shall be paid in full. In case of non-payment within 15 days after receipt of the certified mail notice of non-payment as required above, the Authority may also terminate this Agreement as provided in Section 20 below, unless the Customer challenges the accuracy of the billing as described below and remits payment for any volumes Customer concedes are owed.

B.    A challenge to the accuracy or validity of any monthly billing that is detectible from the face of the bill must be received by the Authority within thirty (30) days after the date the bill was mailed to the Customer, or else the Customer shall be deemed to have waived the right to challenge the accuracy or validity of such billing on that ground. In the event of meter malfunction, reckless mistake, or fraud on the part of the Authority, not discoverable from the representations made on the face of the bill, a challenge may be made to the accuracy of any previous bill(s) so long as the challenge is made within three years of any erroneous monthly billing. No billing previous to the Effective Date of this Agreement may be challenged for any cause.

C.    Authority will be bound by its monthly billing unless it sends notice of correction within thirty (30) days of mailing the monthly bill, except in a case where Customer's fraud causes the Authority to under-report usage or the agreed rate.

12.    **BILLING**. Bills for all POTW and water use provided hereunder shall be rendered on a calendar month billing cycle and shall be mailed by the Authority to the Customer on or before the 5th day of the month following each such calendar month billing period.

13.    **RATE CHANGES AND SURCHARGES**.

A.     The rate set forth in Section 10, above shall be reviewed and adjusted after all bids necessary to build the improvements to the Authority's POTW set in Option 3 of the Tetra Tech proposal attached as Exhibit "A" have been received and accepted by the Authority to assure that adequate revenues are available to meet the cost of those improvements, Any upward adjustments shall be limited to 3.5% of the base rate established in Paragraph 10, supra.   If the improvements cost less to purchase, construct and install than have been estimated, or if part or all of the cost of the improvements have been reduced by a grant, then the base rate charged will be reduced to reflect the lower monthly cost required based on the schedule, attached hereto as Schedule 1, prepared by MFS (Rick Smith), which shows the rate adjustments for any lowered capital costs.

B.     The Authority may, in addition to its regular billings, assess a surcharge if Customer has exceeded the volumes or loadings specified in Paragraphs 5, 7, and 8 above.  If the Administrator proposes to assess a surcharge,  he shall first inform the Customer of the proposed surcharge and shall prepare a written statement of supporting reasons, which shall be made available to the Customer.  Surcharges shall be 120% of the extra treatment costs (including costs of direct physical loss of and damage to the Authority's facilities or equipment  caused by or resulting from excessive usage (volumes exceeding Monthly Daily Average Volumes allowed under this Agreement) or loading, as measured by Customer's Modified SIU Permit).  The Administrator's claims shall be reasonable, supported, and may be reviewed in Arbitration.

14.     **CUSTOMER'S GUARANTY**.   The Customer hereby guarantees, warrants, represents, and covenants that it will not discharge, or cause to be discharged, into the POTW, or onto property owned by the Authority, any wastewater, storm water, septic tank waste, sewage, any waste, pollutant, or any other substance or discharge whatsoever, except in strict accordance with the Customer's Modified SIU Wastewater Discharge Permit.

15.     **WASTEWATER DELIVERY POINT**.  Customer's Allowable Discharge shall be discharged into the POTW at the Wastewater Delivery Point as defined herein, and at no other point or location.  Customer is completely and solely responsible for collection and pretreatment of its wastewater discharge, and delivery of its Allowable Discharge to the Wastewater Delivery Point, including, but not limited to, the costs of construction, operation, and maintenance associated therewith.

16.     **CONSTRUCTION AND OPERATIONAL STANDARDS**.

A.     Customer agrees to maintain and operate its facilities (including lines and pipe connections) for the collection and transport of all discharge delivered pursuant hereto according to (a) the requirements of this Agreement (b) accepted standards governing such construction, operation and maintenance, (c) the Modified SIU Wastewater Discharge Permit, and (f) all other applicable federal, state and local laws, rules, regulations, case law, ordinances and permit requirements.  Customer further agrees to furnish and maintain all water lines, pipe connections, and facilities required to transport treated water from the Customer's Water Delivery Point to Customer's industrial facility and to construct, maintain and operate such facilities for the receipt and

utilization of treated water delivered pursuant hereto according to accepted standards governing such construction, operation and maintenance.

B.    The Authority agrees to furnish and maintain all water lines, pipe connections, and facilities required to deliver treated water to the Customer pursuant to this Agreement from its water treatment plant to the Customer's Water Delivery Point and to deliver Allowable Discharge from Customer's Wastewater Delivery Point to the Authority's POTW.

18.    **CONTINUITY OF SERVICE**.

A.    The services contracted for hereunder will be made available by the Authority on continuous basis, subject to the following interruptions and conditions:

(i)    Acts of God or Uncontrollable Force;

(ii)    Temporary interruptions or reductions for purposes of accomplishing such maintenance, repairs, replacements, installation of equipment, investigations and inspections as are deemed by the Authority to be necessary or desirable;

(iii)    A determination by a state or federal regulatory agency or court which prevents the Authority from operating its POTW or water treatment plant in the way in which the POTW or water treatment plant was operated immediately preceding such decision, or which orders the Authority to modify or terminate its POTW or water treatment plant facilities or services or to modify the manner in which the POTW or water treatment plant operates, or which suspends, revokes, modifies, or terminates the Authority's wastewater discharge or water treatment permits, or which orders that the Customer's POTW or water treatment plant services be terminated;

(iv)    Any emergency situation, including a situation posing possible danger to public health or possible significant environmental damage;

(v)    A situation in which there is a reasonable possibility of a violation of the Authority's state or federal wastewater discharge or water treatment plant permits;

(vi)    A determination or order by a state or federal regulatory agency or court which prohibits the Customer from introducing its wastewater discharge into the POTW;

(vii)    The failure of the Customer to comply with the provisions of the Modified SIU Wastewater Discharge Permit or this Agreement.

In the case of the conditions noted in Subsections 18.A.(i)-(v), the Authority will give the Customer reasonable advance notice of interruptions or reductions, except in case of emergency, and will undertake needed maintenance, repairs, replacements, installation of equipment, investigations and inspections in accordance with a mutually agreed upon schedule, so as to cause the least inconvenience or disruption to both parties hereto. The

7

interruption of service as above outlined shall be reasonable, supported, and reviewable by an Arbitrator. If the Authority determines to terminate this Agreement because of Customer's material breach, the take-or-pay provisions of Paragraph 10, *supra*, will terminate as well.

B. Both the Authority and the Customer shall exercise due diligence, reasonable care and foresight to maintain its equipment to assure continuity of service in the delivery of its Allowable Discharge and the receipt of treated water as provided for in this Agreement.

C. In case of impaired or defective service in the Authority's POTW or water treatment and delivery or in the Customer's equipment due to any reason, the Customer shall, upon becoming aware of such circumstances, immediately give notice to the Authority by telephone, confirming such notice in writing within two (2) business days. Failure of the Customer to give the Authority immediate notice of impaired or defective service shall not relieve the Customer from the obligation to pay for such service by the Authority, until the Authority receives notification of such impairment or defect. Notification under this Section shall be in addition to any notifications required pursuant the Customer's Modified SIU Wastewater Discharge Permit.

19. **TERM OF AGREEMENT**. This Agreement shall become effective and binding on the Effective Date and shall remain in effect for five (5) years, unless terminated earlier pursuant to Section 20 hereof. The Agreement shall be automatically renewed for a second five (5) year term, unless Customer notifies the Authority at least 180 days from the end of the first term that it does not wish to renew the Agreement. After the second five (5) year term, this Agreement shall be automatically renewed for one (1) year terms thereafter, unless Customer notified the Authority at least 180 days from the end of each term that Customer does not wish to renew the Agreement.

In the event the Authority intends to raise rates for the second five (5) year term or first one (1) year term in excess of the annual 3% raises already included herein, the Authority must give the Customer notice of the proposed rate increase at least fourteen (14) months prior to the expiration of the first term of this Agreement. In the event the Authority intends to raise rates for any one (1) year term after the first one (1) year term in excess of the annual 3% raises already included herein, the Authority must give the Customer notice of the proposed rate increase at least 210 days prior to the expiration of the preceding term.

20. **TERMINATION OF AGREEMENT**. This Agreement will terminate upon expiration of the Term of the Agreement, as provided in Section 19 above, unless the Customer fails materially to comply with the provisions of the Modified SIU Wastewater Discharge Permit or commits any other material breach of this Agreement, whereupon the Authority may terminate the Agreement upon thirty (30) days written notice, giving Customer thirty (30) days to cure the breach or violation of this Agreement. If compensation for such breach is agreed upon between the parties and paid by the offending party to the other before the expiration of the thirty (30) day period begun by written notice, as described above, the Agreement may be reinstated. It is mutually

understood and agreed by the parties that the Agreement is violated and a major breach of contract has occurred when the Customer fails to pay any bill accruing under this Agreement on or before the thirtieth (30th) day after Customer's receipt of certified mail notice of nonpayment as provided in Section 11, unless the Customer has protested the accuracy or validity of the billing under procedures outlined in Paragraph 11, above.

21.     **MISCELLANEOUS PROVISIONS**.

A.     Customer shall not attach any implement, equipment, or other thing of any kind or nature to the Authority's POTW without prior written notice. The Authority reserves the right to remove immediately and without notice any unauthorized attachment to its facilities.

B.     The Customer agrees not to discharge into the POTW or use the POTW in any manner so as to disturb service to any other customer or in any manner that is considered improper by the Authority for the use of such service.

22.     **NOTICES**. Any written notice, demand, or requested, required or authorized by this Agreement shall be deemed properly given to or served on the Authority if mailed to:

Dennis Brown or David Taylor
100 S. Main
Muldrow, OK 74948

And on the Customer if mailed to:

Tim Dooley
4601 Reed Lane
Fort Smith, AR 72901

Provided that emergency notices of reductions or interruptions in service may be given by the Authority by telephone to the person in charge at the Customer's plant, at 918-427-2537 or 918-427-2500, and emergency notices of defects or impairments in service may be given by Customer by telephone to the Administrator, at 918-427-3226, or after hours at 479-650-2663. All such telephone notices shall be confirmed in writing to the addresses listed above. The designation of the person to be notified of either party, or the address or telephone numbers of such person, may be changed at any time, and from time to time, by notice in writing to the other party.

23.     **REPRESENTATIVES AND ASSIGNS**. This Agreement shall be binding upon and inure to the benefit of the successors, legal representatives and assignees of the respective parties, but is not assignable by the Customer without the prior written consent of the Authority.

24.     **MODIFICATIONS**. This Agreement may be modified only by written amendment executed by both parties. Except as provided herein, this Agreement supersedes and replaces all previous agreements between the parties relating to water or wastewater service.

9

25. **ENTIRE UNDERSTANDING**. The Agreement contains the full, entire and integrated agreement, promises and understanding between the parties with respect to the covenants, promises, and terms contained herein. No representations, warranties, provisions, covenants, agreements or understandings, whether written or oral and not contained herein or referred to shall be of any force or effect.

26. **CHOICE OF LAW AND FORUM SELECTION**. This Agreement shall be construed under the laws of the State of Oklahoma, without regard to conflicts-of-law principles. The parties agree that venue for any legal proceedings arising out of or relating to this Agreement shall be conducted in a court of competent jurisdiction in Sequoyah County or the federal courts of the Eastern District of Oklahoma, and each party waives any objection to such venue.

27. **ARBITRATION**. In the event a dispute arises, either with respect to this Agreement or from any party's performance hereunder, the parties shall confer to resolve the dispute. If the parties cannot resolve their dispute within forty-eight (48) hours of conferring or if either party refuses to confer, either party may send the other a written notice of the dispute, with a demand for arbitration. All disputes arising under this Agreement that are not resolved by conferring, as described above, except disputes that request the issuance of a temporary or permanent injunction in favor of either party by a court of competent jurisdiction, shall be decided via arbitration proceedings. Arbitration shall be commenced by sending a notice of arbitration, as described above. Such arbitration shall be conducted before a person registered and in good standing with the American Arbitration Association and under the rules of said American Arbitration Association, except that the arbitration shall be held within the state of Oklahoma. The decision of the arbitrator shall be binding and non-appealable if the award is less than five thousand dollars ($5,000.00), exclusive of costs and expenses. If the award exceeds five thousand dollars ($5,000.00) or involves termination of the Contract, the arbitrator's decision may be appealed by either party to a court of competent jurisdiction in the forums listed in Section 26 above on a ground or grounds for appeal from an arbitrator's decision recognized under the laws of Oklahoma. Either party may seek enforcement of the arbitrator's award in a court of competent jurisdiction in the forums listed in Section 26 above.

28. **LIMITATIONS ON LIABILITIES OF AUTHORITY**. If Authority has delivered potable water under standards set by state and federal agencies, Authority shall not be liable to Customer or any buyer from Customer for any losses arising out of the use or incorporation of potable water into products sold by Customer. Authority shall be responsible to Customer for any losses Customer sustained because of a failure to deliver quantities of water stated herein (220,000 Monthly Average Daily Volume, except for fire suppression) unless excused herein, or a failure to deliver potable water under state or federal regulations.

29. **LIABILITY OF PARTIES**. The water supplied under this Agreement is supplied under the express condition that after it passes the lines of the Authority and Water Delivery Point, it becomes the property of the Customer and the Authority shall not be liable for any loss or damage to any person or property whatsoever resulting

10

directly or indirectly from the use, or misuse of such water after it passes the Water Delivery Point to the Customer.

26. **REMEDIES**. The remedies specified herein are not exclusive. The parties may seek all other remedies at lat or equity for breach of this Agreement, including, but not limited to, Customer's failure to timely pay the Authority the rates and charges specified in Sections 10. and 13.B. hereof.

27. **SEVERABILITY**. If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement or caused it to be executed as of the day and year first written above.


MULDROW PUBLIC WORKS AUTHORITY

ATTEST:

By:_____
     Chairman

_____
Secretary


O.K. FOODS, INC.

ATTEST:

By: *Randall W. Goins*
   Title: *Vice President*

*Donna A. Miller*
Secretary


APPROVED:

TOWN OF MULDROW BOARD OF DIRECTORS

ATTEST:

By:_____
     Chairman

_____
Secretary

11

directly or indirectly from the use, or misuse of such water after it passes the Water Delivery Point to the Customer.

26. **REMEDIES**. The remedies specified herein are not exclusive. The parties may seek all other remedies at lat or equity for breach of this Agreement, including, but not limited to, Customer's failure to timely pay the Authority the rates and charges specified in Sections 10. and 13.B. hereof.

27. **SEVERABILITY**. If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement or caused it to be executed as of the day and year first written above.

MULDROW PUBLIC WORKS AUTHORITY

ATTEST:

By: _____
Chairman

_____
Secretary

O.K. FOODS, INC.

ATTEST:

By: _____
Title: _____

_____
Secretary

APPROVED:

TOWN OF MULDROW BOARD OF DIRECTORS

ATTEST:

By: _____
Chairman

_____
Secretary

11

# SCHEDULE I

**Muldrow Water and Wastewater Services**

**Adjustment to OK Foods Rate**

| | | |
|---|---|---|
| Base Capital Project Cost | $ | 3,251,100 |
| Contract Rate (before 3% annual increase) | $ | 5.75 per 1,000 gallons |
| $ reduction/1% Grant Funds | $ | 0.0110 per 1,000 gallons |

| Percentage of Grant Assistance | Project Cost Reduction | Applicable Rate Per 1,000 gal. | Percentage of Grant Assistance | Project Cost Reduction | Applicable Rate Per 1,000 gal. |
|---|---|---|---|---|---|
| 1.00% | 32,511 | $ 5.739 | 51.00% | 1,658,061 | $ 5.189 |
| 2.00% | 65,022 | $ 5.728 | 52.00% | 1,690,572 | $ 5.178 |
| 3.00% | 97,533 | $ 5.717 | 53.00% | 1,723,083 | $ 5.167 |
| 4.00% | 130,044 | $ 5.706 | 54.00% | 1,755,594 | $ 5.156 |
| 5.00% | 162,555 | $ 5.695 | 55.00% | 1,788,105 | $ 5.145 |
| 6.00% | 195,066 | $ 5.684 | 56.00% | 1,820,616 | $ 5.134 |
| 7.00% | 227,577 | $ 5.673 | 57.00% | 1,853,127 | $ 5.123 |
| 8.00% | 260,088 | $ 5.662 | 58.00% | 1,885,638 | $ 5.112 |
| 9.00% | 292,599 | $ 5.651 | 59.00% | 1,918,149 | $ 5.101 |
| 10.00% | 325,110 | $ 5.640 | 60.00% | 1,950,660 | $ 5.090 |
| 11.00% | 357,621 | $ 5.629 | 61.00% | 1,983,171 | $ 5.079 |
| 12.00% | 390,132 | $ 5.618 | 62.00% | 2,015,682 | $ 5.068 |
| 13.00% | 422,643 | $ 5.607 | 63.00% | 2,048,193 | $ 5.057 |
| 14.00% | 455,154 | $ 5.596 | 64.00% | 2,080,704 | $ 5.046 |
| 15.00% | 487,665 | $ 5.585 | 65.00% | 2,113,215 | $ 5.035 |
| 16.00% | 520,176 | $ 5.574 | 66.00% | 2,145,726 | $ 5.024 |
| 17.00% | 552,687 | $ 5.563 | 67.00% | 2,178,237 | $ 5.013 |
| 18.00% | 585,198 | $ 5.552 | 68.00% | 2,210,748 | $ 5.002 |
| 19.00% | 617,709 | $ 5.541 | 69.00% | 2,243,259 | $ 4.991 |
| 20.00% | 650,220 | $ 5.530 | 70.00% | 2,275,770 | $ 4.980 |
| 21.00% | 682,731 | $ 5.519 | 71.00% | 2,308,281 | $ 4.969 |
| 22.00% | 715,242 | $ 5.508 | 72.00% | 2,340,792 | $ 4.958 |
| 23.00% | 747,753 | $ 5.497 | 73.00% | 2,373,303 | $ 4.947 |
| 24.00% | 780,264 | $ 5.486 | 74.00% | 2,405,814 | $ 4.936 |
| 25.00% | 812,775 | $ 5.475 | 75.00% | 2,438,325 | $ 4.925 |
| 26.00% | 845,286 | $ 5.464 | 76.00% | 2,470,836 | $ 4.914 |
| 27.00% | 877,797 | $ 5.453 | 77.00% | 2,503,347 | $ 4.903 |
| 28.00% | 910,308 | $ 5.442 | 78.00% | 2,535,858 | $ 4.892 |
| 29.00% | 942,819 | $ 5.431 | 79.00% | 2,568,369 | $ 4.881 |
| 30.00% | 975,330 | $ 5.420 | 80.00% | 2,600,880 | $ 4.870 |
| 31.00% | 1,007,841 | $ 5.409 | 81.00% | 2,633,391 | $ 4.859 |
| 32.00% | 1,040,352 | $ 5.398 | 82.00% | 2,665,902 | $ 4.848 |
| 33.00% | 1,072,863 | $ 5.387 | 83.00% | 2,698,413 | $ 4.837 |
| 34.00% | 1,105,374 | $ 5.376 | 84.00% | 2,730,924 | $ 4.826 |
| 35.00% | 1,137,885 | $ 5.365 | 85.00% | 2,763,435 | $ 4.815 |
| 36.00% | 1,170,396 | $ 5.354 | 86.00% | 2,795,946 | $ 4.804 |
| 37.00% | 1,202,907 | $ 5.343 | 87.00% | 2,828,457 | $ 4.793 |
| 38.00% | 1,235,418 | $ 5.332 | 88.00% | 2,860,968 | $ 4.782 |
| 39.00% | 1,267,929 | $ 5.321 | 89.00% | 2,893,479 | $ 4.771 |
| 40.00% | 1,300,440 | $ 5.310 | 90.00% | 2,925,990 | $ 4.760 |
| 41.00% | 1,332,951 | $ 5.299 | 91.00% | 2,958,501 | $ 4.749 |
| 42.00% | 1,365,462 | $ 5.288 | 92.00% | 2,991,012 | $ 4.738 |
| 43.00% | 1,397,973 | $ 5.277 | 93.00% | 3,023,523 | $ 4.727 |
| 44.00% | 1,430,484 | $ 5.266 | 94.00% | 3,056,034 | $ 4.716 |
| 45.00% | 1,462,995 | $ 5.255 | 95.00% | 3,088,545 | $ 4.705 |
| 46.00% | 1,495,506 | $ 5.244 | 96.00% | 3,121,056 | $ 4.694 |
| 47.00% | 1,528,017 | $ 5.233 | 97.00% | 3,153,567 | $ 4.683 |
| 48.00% | 1,560,528 | $ 5.222 | 98.00% | 3,186,078 | $ 4.672 |
| 49.00% | 1,593,039 | $ 5.211 | 99.00% | 3,218,589 | $ 4.661 |
| 50.00% | 1,625,550 | $ 5.200 | 100.00% | 3,251,100 | $ 4.650 |